# W. G. Ward Lumber Co. *v.* American Lumber & Manufacturing Co., Appellant.

*Contracts—Sales of personal property—Deceit—Voidable title —Conflict of laws—Bona fide purchaser for value—Notice of rescission—Evidence.*

1. A vendor, who has been induced by fraud to sell personal property to a vendee, may rescind the contract upon discovering the fraud, not only as against the original purchaser, but as against a transferee, who is not a bona fide purchaser for value.

2. Where a contract for the sale of lumber was made by letters, one addressed to and received by the vendor at its place of business in Ohio, containing an offer, and the other mailed at the same place, accepting the offer, and the lumber was shipped from the same place, to points outside of Ohio, the contract is an Ohio contract and will be construed by the law of that State.

3. Where in such case it was shown that the lumber sold by plaintiff to the fraudulent vendee had been resold to defendant in consideration of the cancellation of a pre-existing debt, and that under the law of Ohio such a consideration did not constitute defendant a bona fide purchaser for value, and that defendant had had notice that plaintiff claimed the lumber prior to a resale by it to a customer, a verdict and judgment for plaintiff was sustained.

Argued Oct. 12, 1914.  Appeal, No. 13, Oct. T., 1914, by defendant, from judgment of Superior Court, No. 101, April T., 1914, affirming order of C. P. Allegheny Co., Jan. T., 1910, No. 783, refusing judgment for defendant n. o. v., and entering judgment on the verdict in case of W. G. Ward Lumber Co. v. American Lumber and Manufacturing Company.  Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ.  Affirmed.

Appeal from Superior Court.  ORLADY, J., filed the following opinion:

While some of the assignments of error present questions that are not entirely free from doubt, we are not prepared to say that there is any error suggested that would justify a reversal of the judgment.

In the opinion filed by the learned trial judge, FORD, J., refusing to grant a new trial and to enter judgment n. o. v., the questions involved in this appeal are fully reviewed and rightly decided. The disputed facts in the case were clearly and adequately submitted to the jury and the verdict was warranted by the evidence adduced in the trial.

The judgment is affirmed.

The opinion of FORD, J., overruling the motion for a new trial and entering judgment n. o. v. was as follows:

This is an action for damages for the alleged taking and appropriating of certain lumber claimed to be the property of the plaintiff. The verdict of the jury was for the plaintiff and the defendant moves the court for judgment non obstante veredicto and a new trial.

The material facts are substantially as follows: By writing dated July 13, 1908, the W. E. McMillan Company, incorporated under the laws of the State of Pennsylvania with offices and place of business in the City of Pittsburgh, ordered certain lumber from the W. G. Ward Lumber Company, incorporated under the laws of the State of Ohio with offices and place of business at Ironton in that state. The order specified the quantity, grade and price of the lumber, and directed that it be shipped to the American Lumber and Manufacturing Company, f. o. b. Montreal, Quebec. The order was accepted and on July 16 the plaintiff delivered the lumber to the railroad company for shipment.

On July 24, by proceedings had in the Court of Common Pleas of Allegheny County, the McMillan Company was declared insolvent and E. M. Gailey appointed receiver.

Prior to July 13, 1908, the defendant, a corporation, incorporated under the laws of the State of Pennsylvania with its offices in the City of Pittsburgh, had transacted business with the McMillan Company. The business conducted between them consisted in part, per-

haps wholly, in exchanging lumber. In the previous May an exchange was effected, whereby the defendant furnished the McMillan Company a car of cypress and the McMillan Company agreed to furnish the defendant a car of poplar. On July 16, W. E. McMillan, president of the McMillan Company, visited the office of the defendant, in the City of Pittsburgh, and to a representative of the defendant stated that the car of poplar agreed to be furnished by the McMillan Company had been lost or diverted, and in lieu thereof Mr. McMillan gave the defendant the bill of lading for the lumber purchased from the plaintiff.

On July 31, 1908, the car of lumber shipped by the plaintiff was delivered by the Canadian Pacific Railroad Company to the McLennan Lumber Company at Montreal, Quebec, on the order of the defendant.

The statement filed by the plaintiff alleges, and the jury have found that at the time the order for the lumber was given plaintiff, the McMillan Company was insolvent; that W. E. McMillan, president, knowing that the McMillan Company was insolvent, falsely represented it as solvent, worth $35,000, and the plaintiff, relying on the representation made by W. E. McMillan, sold and shipped the lumber; that on learning of the falsity of the representation the plaintiff rescinded the contract and demanded the return of the lumber, which demand the defendant refused; and that the transfer from the McMillan Company to the defendant was in payment of a pre-existing debt.

The questions involved in the motion for judgment non obstante veredicto are:

1. Was the action properly brought in trespass?

2. Is the contract governed by the laws of Ohio?

3. Was the plaintiff under the facts disclosed by the evidence entitled to recover?

We will consider the questions in order.

That trover will lie against a fraudulent vendee is not questioned, but it is contended that the defendant ac-

cepted the bill of lading without notice or knowledge of any equities in the plaintiff and that prior to demand made by the plaintiff the defendant sold and delivered the lumber to one of its customers.

It is well established that if a defendant in an action of trover had no possession, actual or constructive, at the time of demand and refusal and previously there has been no tortious taking or withholding he is not liable. Moneyweight Scale Co. v. Atwell, 58 Pitts. Leg. J., 419.

In this case the defendant came lawfully into possession of the bill of lading. The contract under which the plaintiff sold the lumber to the McMillan Company was voidable. The plaintiff at the delivery of the bill of lading by the McMillan Company to the defendant had neither rescinded the contract nor reclaimed the goods, but there is no evidence that prior to demand made by the plaintiff on July 31 the defendant had parted with possession of the lumber.

By letter dated November 3, 1911, counsel for the plaintiff wrote counsel for the defendant inquiring whether an admission would be made relative to the delivery of the lumber at Montreal, to which counsel for defendant by letter of November 11 replied, admitting "that this car was originally consigned to us at Montreal, Canada, and delivered to the McLennan Lumber Company upon our order to the Canadian Pacific Railway Company."

No testimony was given showing when the order was delivered by the defendant to the McLennan Company. Nor in what capacity the company accepted and held the lumber, whether as agent for the defendant or as a vendee does not appear.

At the demand made by the plaintiff on July 31 no disclaimer of title was made by the defendant, nor did the defendant in its bill of particulars allege as a defense that the goods had been sold and delivered to the McLennan Company or to any purchaser prior to the demand.

The delivery of the bill of lading by the McMillan Company operated as a delivery of the property itself, investing the defendant with a constructive custody which served all the purposes of an actual possession and so continues until there is a valid and complete delivery of the property under and in pursuance of the bill of lading to the person entitled to receive the same, Hieskell v. Farmers and Mechanics Nat. Bank, 89 Pa. 155, and it not appearing that the defendant had parted with its possession prior to demand, the plaintiff might maintain an action in trespass.

2. In its statement the plaintiff alleged and at the trial offered to prove that by the law of Ohio, where a purchaser obtains goods fraudulently or on a contract which may be rescinded and transferred to another in payment of a pre-existing debt, such precedent debt will not be sufficient consideration to constitute the transferee a bona fide purchaser for value, as against the owner from whom the goods were obtained by fraud or on a contract which might be rescinded. To the offer the defendant objected as incompetent, irrelevant and immaterial.

It is true that under the uncontradicted facts the title to the lumber passed from the plaintiff to the McMillan Company and that prior to plaintiff's rescission of the contract, the McMillan Company delivered the bill of lading to the defendant in payment of a pre-existing debt. If the contract between the plaintiff and the McMillan Company was executed in the State of Ohio, the transaction was governed by the laws of that state.

The contract is based on a correspondence, commencing with a letter from the McMillan Company and terminating in an acceptance of an order. The letter was addressed to and received by the plaintiff at its place of business in Ironton, Ohio, from which place plaintiff made replies, accepted the order and shipped the lumber.

The letter of the McMillan Company to the plaintiff is dated July 8 and requests that prices be quoted on

lumber for delivery f. o. b. Montreal and at various other named places. Replying by telegram on July 13 plaintiff quoted a price for delivery at Montreal. On the same day the McMillan Company forwarded an order for the lumber at the quoted price and directed that it be shipped to the defendant f. o. b. Montreal, Quebec. The order was accepted by the plaintiff. On July 15 and 17 the McMillan Company wrote the plaintiff concerning the invoice and bill of lading.

In Werner Saw Mill Co. v. Ferree, 201 Pa. 405, 408, the defendants, residents of Allegheny County, contracted with the plaintiff, a corporation of the State of Missouri, for the delivery of certain yellow pine lumber at the lowest delivered prices. It was held:

"Appellant argues, that under the law as announced in Braddock Glass Co. v. Irwin, 153, Pa. 440, and all our cases where goods are sold to be delivered by the vendor to the vendee at a certain place and are by the fault of the carrier not so delivered, the carrier being the agent of the vendor the latter is responsible for the neglect. The law is sound enough and we do not attempt to modify it. But this contract is in writing to be construed by the court. What within the meaning of the parties, was the undertaking of the vendor? We think the vendee only stipulated for a price delivered at certain points and that is all the vendor undertook to fix ......We think that was all that was intended by the parties by the language, 'Please quote us your lowest delivered prices'; it was to fix a price beyond which no charge could be made against the vendee either by shipper or carrier, no matter what the freight, therefore, a delivery to the railroad company was a delivery to the purchaser."

In Somerset Door & Column Co. v. Weber Co., 43 Pa. Superior Ct. 290, a manufacturer residing at Somerset by letter was requested to quote prices on certain goods to be delivered f. o. b. Philadelphia, and it was held that "the letters f. o. b. Philadelphia were intended to fix a

price beyond which no charge could be made against the vendee, either by shipper or carrier, and did not necessarily imply that they were to be delivered at Philadelphia as a consummation of the contract."

The letter of the McMillan Company to the plaintiff requested prices on various consignments to be delivered f. o. b. at different and widely separated places. The manifest purpose of the company was to obtain a fixed price, beyond which the defendant would not be bound to pay. The freight was not to be prepaid by the plaintiff, but by the consignee at the place of delivery and deducted from the contract price, thereby preventing any increase in the cost over and above the amount the company agreed to pay.

The contract between the plaintiff and the McMillan Company was made and performed in Ironton, and is governed by the laws of Ohio.

3. By the verdict the jury has found that on July 16 the W. E. McMillan Company was insolvent and that the sale of the lumber by the plaintiff was induced by the false and fraudulent representations made by W. E. McMillan, respecting the financial condition of the company. As between the McMillan Company and the plaintiff, the contract whereby the plaintiff sold the lumber was voidable. The fraud of the McMillan Company being shown, the defendant could have no title to the lumber unless he obtained it bona fide and for a valuable consideration, and the burden would be on the defendant to prove the good faith and fairness of the transaction. Neff v. Landis, 110 Pa. 204.

There is no positive testimony that the defendant had knowledge or notice of any fraud practiced by McMillan in the purchase of the lumber, but the circumstances were such as to put the defendant on inquiry.

Immediately upon receipt of the bill of lading W. E. McMillan visited the place of business of the defendant, explained that the car of cypress agreed to be furnished in May had been lost or diverted and gave the defendant

the bill of lading. Prior to the visit of W. E. McMillan the defendant had no notice that the car of poplar had been lost. Its customer had not complained, nor did it appear what disposition had been made of the bill of lading for the lost lumber. The books of the defendant show that on July 16 the defendant was indebted to the McMillan Company in the sum of $1,159.11. The account of the defendant on the books of the McMillan Company showed neither debit nor credit. The defendant and the McMillan Company were residents of the City of Pittsburgh, both engaged in the lumber business. The McMillan Company at the delivery of the bill of lading was insolvent and so declared eight days thereafter. The court could not say as a matter of law that there was no evidence from which an inference of defendant's bad faith might not be reasonably inferred, and the jury having found for the plaintiff, we are not persuaded that the verdict should be disturbed.

In addition to the questions discussed, the defendant as a reason for a new trial alleges: that in answering plaintiff's second point, the court nullified what was said in the general charge relating to the good faith of the defendant.

The jury could not have been misled by the answer. The point was refused as not embracing all of the elements necessary to entitle the plaintiff to recover and the jury instructed that if they found the facts stated in the point and they further believed the testimony of Mr. Johnston, then as between the plaintiff and the McMillan Company the plaintiff had the right to rescind the contract and demand a return of the property. This was immediately followed by the answer to the third request, instructing the jury that if they found the facts as stated in the point and also found that the transfer by the McMillan Company to the defendant was in bad faith as explained in the general charge, then the plaintiff would be entitled to recover.

The Superior Court affirmed the judgment of the Court of Common Pleas.   Defendant appealed.

*Error assigned* was the judgment of the Superior Court.

*R. B. Ivory,* of *Ivory & McKay,* for appellant.

*A. R. Johnson,* with him *Kinnear, McCloskey and Best,* for appellee.

OPINION BY MR. JUSTICE BROWN, January 2, 1915:

Under the testimony produced on the trial of this case the jury could not have avoided the finding that the W. E. McMillan Company had procured a carload of lumber from the plaintiff company by fraud and deceit.   This rendered the contract voidable, and, upon discovery of the fraud, the right of the plaintiff was to disaffirm the contract and bring trespass against the company which had defrauded it.   That company had transferred the lumber to the American Lumber & Manufacturing Company, and a further fact found by the jury is that the transfer to it was in consideration of pre-existing indebtedness due it by the W. E. McMillan Company.   The contract between the appellee and the W. E. McMillan Company was an Ohio one, and there was proof that, under the law of that state, where a purchaser obtains goods fraudulently and the same are transferred by him to another in payment of a pre-existing debt, such precedent debt will not be a sufficient consideration to constitute the transferee a bona fide purchaser for value as against the owner from whom the goods were obtained by fraud.   From the judgment entered on the verdict in favor of the plaintiff an appeal went to the Superior Court, which affirmed the judgment practically on the opinion of the court below, refusing a new trial and a motion for judgment n. o. v. :  Ward Lumber Co. v. Am. L. & M. Co., 55 Pa. Superior Ct. 147.   ORLADY, J., speak-

ing for the Superior Court, said: "In the opinion filed by the learned trial judge, FORD, J., refusing to grant a new trial and to enter judgment n. o. v. the questions involved in this appeal are fully reviewed and rightly decided. The disputed facts in the case were clearly and adequately submitted to the jury, and the verdict was warranted by the evidence adduced in the trial." We have been led to the same conclusion. At the oral argument we had some doubt as to the sufficiency of the evidence showing that the appellee had rescinded its contract with its fraudulent vendee, and that the appellant had notice of this. From our subsequent examination of the testimony we are of opinion that the question of the rescission of the contract was for the jury. L. B. Oehmichen, the treasurer of the defendant company, called as a witness by the plaintiff, in referring to a conversation which he had with some one representing it, testified as follows: "Q.—On or about July 31, 1908, did you have a telephone conversation with the W. G. Ward Company, or somebody representing them? A.— Yes, sir. Q.—Do you remember with whom it was? A.—No, sir—somebody representing themselves as the Ward Lumber Company over the 'phone talked with me. Q.—Will you give us the substance of that conversation? A.—They told me that they had shipped the car to the McMillan Company, and they heard that the McMillan Company was in a failing condition, and asked if we would protect them and pay their bill. I told them we did not recognize them as a factor in the case, did not buy from them, and therefore could not pay them for the lumber we had bought from McMillan. Then they told me that they would try to stop delivery of the shipment. That's all; that was the substance of the conversation. Q.—Did whoever talked with you insist that they would try to get the lumber if they could? A.—Yes, so they told me. Q.—Claimed it as their property? A.—No; they claimed they shipped it to Mc-Millan. Q.—But they were going to reclaim it as their

property?  A.—They didn't put it in that way to me. They shipped it to McMillan and McMillan was in a failing condition, and they wanted to find out if we would protect them in the matter and pay their bill.  Q.—And when you told whoever it was that you would not protect them, they said they would stop the car?  A.—Yes, sir."

As the opinion of the lower court upon which the Superior Court affirmed its judgment will appear in connection with this opinion, we need say nothing further in affirming the judgment of the Superior Court.

Judgment affirmed.