## NEWSPAPER READERS SERVICE, Inc., v. CANONSBURG POTTERY CO.

### No. 8610.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 21, 1944.

Decided Jan. 16, 1945.

Vincent M. Casey, of Pittsburgh, Pa. (Margiotti, Pugliese & Casey, of Pittsburgh, Pa., on the brief), for appellant.

William G. Heiner, of Pittsburgh, Pa. (David B. Campbell, of Canonsburg, Pa., on the brief), for appellee.

Before MARIS and GOODRICH, Circuit Judges, and SCHOONMAKER, District Judge.

MARIS, Circuit Judge.

The plaintiff brought suit in the District Court for the Western District of

Pennsylvania to recover damages for breach of a written contract entered into between the defendant and S. R. Taylor trading as S. R. Taylor Co. The plaintiff is the assignee of S. R. Taylor Co. The district court dismissed the complaint. The primary question in controversy is whether a contract was made. The plaintiff contends that the court was not justified in its conclusion that there was no contract and was in error in dismissing the complaint upon this ground. On the other hand, the defendant urges that the order of the district court dismissing the complaint was proper not only because no contract was made but also because the contract, if it be concluded that there was one, was so indefinite and incomplete as to be unenforceable and because it was non-assignable.

We turn first to the question whether there was a contract. The plaintiff relies upon two written instruments which it has attached to its complaint as exhibits. Exhibit "A," which contains the offer, reads:

"Canonsburg Pottery Company
"Canonsburg, Pa.
"8–6–42

"We will deliver to S. R. Taylor Co. two cars of dinnerware per week of sample patterns—barring all strikes or acts of God under which we have no control. To begin approx. Sept. 1st. Patterns & packaging and shipments as selected. We will deliver on this basis for a period of a year and any extension to complete contract obligations of S. R. Taylor Co.

"Prices as agreed today August 6th as follows:

"No. 115-A-2—108 pc. set...........10.40
"No. 1608—108 pc. set..............12.36
"Flora—108 pc. set.................12.36
"Dorthea—108 pc. set..............13.74
"1584-H or 1584-J—108 pc. set......14.34
"Moss Rose—108 pc. set............14.17
"539-H—Service Plate ............. 5.25
"539-H—Service Plate ..........W/5.40

"All above prices are plus packing charge—
       "(s)  Canonsburg Pottery Co.
                    "W. C. George—Pres.
"In event of labor increase same shall be negotiated between us.
              "(s)  C. P. Co.
                       "W. C. G."

Exhibit "B," upon which the plaintiff relies as an acceptance of the offer, reads:

"S. R. Taylor Company
"100 Summer Street
"Boston, Mass.
                    "August 6, 1942
"Canonsburg Pottery Company
"Canonsburg, Pa.
              Att: W. C. George
"Dear Mr. George:

This will confirm our contract made today wherein you agree to ship us a minimum of Two Carloads or equivalent, of Dinnerware per week commencing within Two weeks of date that we send you shipping instructions. This Dinnerware to be packed and shipped per our specifications.

We have already selected three patterns that we will put into operation at once. These are No. 1608—1584N and 'Dorthea.'

In order to make up our advertising forms will you therefor please ship at once via Express the following unit items of each of these patterns to me in New York as follows:

"1 Dinner Plate of each pattern
"1 Deep Soup of each pattern
"1 Cup and Saucer
"1 Covered Nappie (or Casserole)
"1 Creamer
"1 Covered Sugar
"1 Boat
"1 Pickle Dish
"1 Salt
"1 Pepper
"1 10″ dish

"Ship to me personally as follows:
       "S. R. Taylor
       "% Lincoln Hotel
       "New York City.

"Please send me acknowledgment stating shipping date to same address where I will be waiting to handle with our advertising agency.
       "Very truly yours,
                    "S. R. Taylor Co.
"SRT/M             By S. R. Taylor"

The district court examined these exhibits and noted that whereas Exhibit "A" contained an offer to make deliveries to begin approximately September 1st, the responsive provision in Exhibit "B" was to accept deliveries commencing within two weeks of the date that plaintiff's assignor sent the defendant shipping instructions.

The district court also noted that among the eight patterns listed in Exhibit "A" there was no pattern designated No. 1584 N, which was one of the three patterns selected in Exhibit "B". The district court concluded that these differences were so material as to amount to a rejection or counter-offer by the plaintiff's assignor of the offer made by the defendant.

We think that the district court placed undue stress upon these differences. Essentially the offer made by the defendant in Exhibit "A" was to deliver to S. R. Taylor Co. two cars of dinnerware per week with a choice of eight patterns, among which were No. 1608 and Dorthea. In Exhibit "B" S. R. Taylor Co. agreed to accept delivery of two cars of dinnerware per week, with patterns No. 1608 and Dorthea selected.[1] The mutual assent which is required by law for the formation of an informal contract is thus present. There were differences, it is true, but we do not believe them to have been so material as to alter the terms of the contract which we have just described.[2]

■ Under the Pennsylvania conflict of laws rule the interpretation of a contract is determined by the law of the place of contracting. Allshouse v. Ramsay, 1841, 6 Whart. 331, 37 Am.Dec. 417; Benners v. Clemens, 1868, 58 Pa. 24. By the law of Pennsylvania a contract is made when and where the last act necessary for its formation is done. W. G. Ward Lumber Co. v. American L. & Mfg. Co., 1915, 247 Pa. 267, 93 A. 470, Ann.Cas.1918A, 451. Since in this case the final act, the acceptance, was in Massachusetts we have consulted the law of that state. Our conclusion is that when interpreted by that law Exhibits "A" and "B" formed a contract despite the variance between the terms of the two documents. Duggan v. Matthew Cummings Co., 1931, 277 Mass. 445, 178 N.E. 825.

In the case just cited the plaintiff offered to erect structural steel in a building at a stated price per ton basing the price on the present wage scale. Nothing was said about the number of tons on which the price was based, when the steel was to be ready for erection, or when shipments were to be completed. The defendant replied, "We hereby accept your proposition to erect the structural steel at the Administration Building, City Hospital. Please come into the office and we will draw up our standard form of contract." The court found that this letter was an acceptance and did not purport to make acceptance conditional upon the execution of the defendant's standard form of contract, and consequently that the parties had entered into a contract.

We conclude that the defendant and the plaintiff's assignor did enter into a written contract for the sale of two cars of dinnerware per week.

■ We turn next to the defendant's contention that the contract evidenced by Exhibits "A" and "B" is so indefinite and incomplete as to be unenforceable. Specifically the defendant claims that the contract makes no provision for the time of payment nor for the time when title is to pass to the dinnerware. Neither objection is well taken. The Massachusetts Sales Act provides that in the absence of an agreement to the contrary delivery of the goods and the payment of the price are concurrent conditions. Mass. Gen. Laws 1932, Ch. 106, Sec. 31. To the same effect see National Contracting Co. v. Vulcanite Portland C. Co., 1906, 192 Mass. 247, 78 N.E. 414, in which the court held that where the contract was silent as to the time of payment the legal effect was to make the price payable on delivery. It follows that the obligation of the plaintiff's assignor as to the time of payment is certain and that the silence of the contract documents on this point is of no consequence.

■ The Massachusetts Sales' Act also provides that unless the parties express a different intention the rule is that where there is a contract to sell unascertained or future goods by description and goods of that description in a deliverable state are unconditionally appropriated to the contract either by the seller with the assent of the

---

[1] The fact that Taylor in Exhibit "B" also stated that he had selected pattern No. 1584 N, a pattern not offered in Exhibit "A", is immaterial. While this was, perhaps, a new offer by Taylor to purchase dinnerware of that pattern it had no bearing on the contract here sued on.

[2] Rest., Contracts

"§ 58—Acceptance must be unequivocal in order to create a contract."

"§ 62—An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms."

buyer or by the buyer with the assent of the seller the property in the goods passes to the buyer. Mass.Gen.Laws 1932, Ch. 106, Sec. 21. Accordingly the silence of the documents on this point also is immaterial since it does not render the rights and obligations of the parties in any wise uncertain.

We conclude that the contract was sufficiently definite and complete to be enforceable.

Finally we turn to the defendant's contention that the plaintiff did not state a cause of action because the contract upon which it sued as assignee was not assignable. In Pennsylvania it has been held that the lex loci contractus governs the validity of the transfer of a chose in action. Levy v. Levy, 1875, 78 Pa. 507, 21 Am.Rep. 35. To the same effect, although somewhat differently expressed is Section 348 of the Restatement of Conflict of Laws, in which it is stated that "Whether a right under a contract is capable of being transferred by the owner, is determined by the law of the place of contracting." Both parties rely upon Section 151 of the Restatement of the Law of Contracts as a correct and comprehensive statement of those rights which may be the subject of effective assignment.[3] The Massachusetts law is in harmony with this section. Bryne v. Dorey, 1915, 221 Mass. 399, 109 N.E. 146. The defendant urges that the contract, properly construed, itself prohibits an assignment. Its argument is that the contract contemplates the delivery of dinnerware to meet the contract obligations of S. R. Taylor Co. only and that its burden could not lawfully be increased to the extent necessary to meet in addition the contract obligations of Taylor's assignee.

The undertaking was to deliver two cars of dinnerware per week to S. R. Taylor Co. "for a period of a year and any extension to complete contract obligations of S. R. Taylor Co.". The obligation was to deliver a definite quantity, two carloads per week, and not the indefinite quantity which might be required to meet Taylor's contract commitments as they arose. We think that the "contract obligations of S. R. Taylor Co." referred to in the contract were intended to be those contract obligations only which might be outstanding at the end of the contract year. While Exhibit "A" is somewhat inartistically phrased it seems reasonably clear that these contract obligations were referred to as a measure of the additional time or "extension" after the end of the contract year during which the defendant agreed to continue making its weekly shipments of two cars of dinnerware. We see nothing in these provisions to prevent the assignment by Taylor of his interest in the contract, at least so far as concerns shipments to be made during the contract year. Since the question is not before us we express no opinion as to whether the assignee would be entitled under the contract to any shipments after the end of the contract year.

We have considered the other contentions made by the defendant and find them wholly without merit.

The judgment of the district court is reversed and the cause is remanded with directions to reinstate the second amended complaint.

---

[3] "Sec. 151. A right may be the subject of effective assignment, unless,

"(a) the substitution of a right of the assignee for the right of the assignor would vary materially the duty of the obligor, or increase materially the burden or risk imposed upon him by his contract, or impair materially his chance of obtaining return performance, or

"(b) the assignment is forbidden by statute or by the policy of the common law, or

"(c) the assignment is prohibited by the contract creating the right."