221 F.2d 770
 Clifford W. L. CALLWOOD, Appellant,
v.
The VIRGIN ISLANDS NATIONAL BANK, Osmond Kean, August Betz,
Executor of the Estate of Anna R. Peiffer,
Deceased, Iza Callwood and Elsa E. Callwood.
 No. 11344.
 United States Court of Appeals Third Circuit.
 Argued Jan. 25, 1955.
Decided April 26, 1955.
 
 Eustace V. Dench, Charlotte Amalie, St. Thomas, Virgin Islands, for appellant.
 Harry A. Dreis, Charlotte Amalie, St. Thomas, Virgin Islands, for appellees August Betz, Executor of the Estate of Anna R. Peiffer, and Iza Callwood.
 George H. T. Dudley, Charlotte Amalie, St. Thomas, Virgin Islands, for appellee Elsa E. Callwood.
 Before BIGGS, Chief Judge, and MARIS and WOODBURY, Circuit Judges.
 MARIS, Circuit Judge.
 
 
 1
 This case involves conflicting claims to a fund which was on deposit in the Virgin Islands National Bank comprising the net rents of realty situate in the town of Charlotte Amalie in the island of St. Thomas. This court has heretofore had occasion to review the interests in this realty which passed under the will of Richard Edgar Clifford Callwood when he died on January 17, 1917 in Germany.[1] Thirteen parcels of real estate were involved, title to all of which had been taken in the name of the testator's sister, Anna R. Peiffer. Ten of the parcels belonged to the testator alone and three of them to the testator and Mrs. Peiffer. Richard E. C. Callwood's will provided that Mrs. Peiffer should have a life estate in all this realty provided she transferred title to Elsa E. Callwood, His widow, and paid an annuity for life, or a lump sum, to Iza Callwood, his daughter. Mrs. Peiffer complied with both conditions. She conveyed the properties to Mrs. Callwood by deed dated June 7, 1924,[2] reserving a life estate for herself, and she paid her niece, Iza Callwood, who lived with her in Germany, the lump sum required. Osmond Kean of St. Thomas was employed by Mrs. Peiffer as her agent for the collection of the rents and the management of these properties. She enjoyed the income from her life estate until 1941, when upon the entry of the United States into the war with Germany, the income could no longer be transmitted to her in Germany. Accordingly from 1941 until July 11, 1947, the date of her death, Kean deposited the net amounts of rentals in the Virgin Islands National Bank in St. Thomas. The balance in the bank account at the time of Mrs. Peiffer's death was $7,706.12.
 
 
 2
 Clifford W. L. Callwood, nephew of the life tenant Mrs. Peiffer and son of Richard E.C. and Elsa E. Callwood, claimed this fund of $7,706.12 by virtue of an assignment dated January 31, 1947, executed by Iza Callwood, as attorney in fact for her aunt, Mrs. Peiffer. The assignment purported to transfer the claim to all the funds then on deposit in the bank, stated to be approximately $6,700.00, and the future income from Mrs. Peiffer's life estate in the realty in St. Thomas. On July 27, 1948, Callwood, accompanied by Kean, presented the assignment to the bank. Upon Callwood's direction, Kean thereupon opened a new account in the amount of $5,206.12 entitled 'Osmond Kean, in trust for Elsa Callwood & C. W. L. Callwood' and another new account in the amount of $2500.00 in the name of 'Osmond Kean in trust for C. W. L. Callwood' alone. Subsequently, on July 18, 1949, Kean, without authority from Callwood, transferred these two accounts into a checking account entitled 'The Estate of Anna Peiffer (born Callwood), German National, deceased, by Osmond Kean.'
 
 
 3
 On June 27, 1951 Clifford W. L. Callwood instituted the present suit in the District Court of the Virgin Islands against the Virgin Islands National Bank and Osmond Kean to recover the balance of $7,706.12 in the account just referred to, claiming that he was entitled to it as assignee of Anna R. Peiffer. The complaint sought a judgment directing the defendants to pay the plaintiff the said sum of $7,706.12. On July 5, 1951 the bank before filing an answer moved to interplead as parties defendant August Betz, of Wiesbaden, germany, the executor of the estate of Anna R. Peiffer, Iza Callwood of Wiesbaden-Biebrich, Germany, and Elsa E. Callwood of St. Thomas, all of whom had asserted claims to the fund. The district court granted the motion and all three of these parties subsequently appeared in the action by counsel. On July 13, 1951 the bank filed its answer and counterclaim for interpleader, admitting the deposit account and asserting that it was a mere stakeholder. At the same time it paid the amount of $7,706.12 into the registry of the court.
 
 
 4
 On August 3, 1951 Mrs. Callwood filed her answer asserting that the assignment under which the plaintiff claimed was invalid and that she was entitled to $5,200.00 of the fund by virtue of a verbal assignment to her by Mrs. Peiffer in August, 1939. Thereafter on March 5, 1952 Iza Callwood and August Betz filed joint answers denying the validity of the assignments relied on by Callwood and Mrs. Callwood, respectively, and a cross claim that Iza Callwood as sole heir and next of kin of Anna R. Peiffer, deceased, should be adjudged entitled to the fund. On March 6, 1952 Callwood filed a reply to the answer of Mrs. Callwood, denying her allegations in toto. On November 6, 1952 Callwood filed a reply to the answer and cross claim of Iza Callwood denying her allegations.
 
 
 5
 On December 8, 1952 Mrs. Callwood with leave of court filed an amended answer setting up by way of counterclaim her claim to $5,200.00 of the fund under the verbal assignment alleged in her original answer and a further claim for an additional award out of the fund to reimburse her for the cost of repairing waste alleged to have been committed by the life tenant, Mrs. Peiffer, to the realty in St. Thomas. Thereupon all the other parties filed amended pleadings. Callwood in his amended reply to Mrs. Callwood's amended answer and counterclaim reiterated his prior denial of the validity of her alleged verbal assignment and also denied her allegations of waste on the part of Mrs. Peiffer. Iza Callwood in a separate amended answer to the plaintiff's complaint reiterated her allegations of the invalidity of Callwood's assignment but no longer sought a direct award of the fund to herself. Betz, on the other hand, in a separate amended answer to the plaintiff's complaint not only realleged the invalidity of Callwood's assignment but prayed for judgment declaring the fund to be the property of the estate of Anna R. Peiffer, of which he was executor. Moreover in an amended answer to the counterclaim of Mrs. Callwood he not only reiterated the allegation that the alleged verbal assignment to her was invalid but asserted that her additional counterclaim for waste was premature since it was a claim against the estate of Anna R. Peiffer which must be adjudicated in a probate proceeding under the local law. Shortly thereafter defendant Kean filed his first and only pleading, which he described as an 'interpleader', in which he claimed the sum of $418.00 which he alleged he had paid to Mrs. Callwood in connection with his accounting in the previous case of Callwood v. Kean, 3 Cir., 189 F.2d 565, and as to which he asserted he was entitled to be reimbursed from the fund here in litigation.
 
 
 6
 It will thus be seen that the issues presented to the district court for determination at the trial included the validity and effectiveness of the assignment of January 31, 1947 by Mrs. Peiffer through her attorney in fact Iza Callwood to Callwood of the fund in controversy, the validity and effectiveness of the alleged verbal assignment by Mrs. Peiffer to Mrs. Callwood in August, 1939, whether the fund should be determined to belong to the estate of Anna R. Peiffer, deceased, and whether Mrs. Callwood was entitled to an award out of the fund to compensate her for waste committed by Mrs. Peiffer as life tenant. As to this last issue the pleadings also posed the question whether the claim for waste could properly be presented in this action or whether it must be presented later in a probate proceeding involving the estate of Anna R. Peiffer. There were also subsidiary questions as to the rights of the various parties to be awarded counsel fees and costs.
 
 
 7
 After trial of the issues the district court filed an opinion, holding that the assignment under which Callwood claimed the fund was invalid upon a number of grounds, and that the assignment under which Mrs. Callwood claimed a portion of the fund was likewise invalid, but that she was entitled to an award of $2500.00 to reimburse her for the expense of repairing waste to the St. Thomas realty committed by Anna R. Peiffer as life tenant. 121 F.Supp. 379. The district court accordingly entered a judgment awarding to Mrs. Callwood $2500.00 plus $700.00 to cover attorneys' fees and costs, a total of $3200.00, to the Virgin Islands National Bank $400.00 to cover attorneys' fees and costs, and to the estate of Anna R. Peiffer $1400.00 to cover attorney's fees and costs plus the balance of the fund, $2504.62, a total of $3904.62. The court had previously awarded $201.50 out of the fund to cover the cost of the transcript of the testimony taken at the trial. From the judgment thus entered the plaintiff Callwood appealed to this court.
 
 
 8
 The primary question raised upon this appeal is whether the district court erred in holding that the assignment made on January 31, 1947, in Wiesbaden, Germany, by Iza Callwood, as attorney in fact for Mrs. Peiffer, to Clifford Callwood was invalid and of no effect. We are satisfied that the district court correctly decided this question.
 
 
 9
 As pointed out earlier the assignment dealt with two things, the accumulated rents then on deposit in the Virgin Islands National Bank and the right which Mrs. Peiffer had to receive future rents during the remainder of her life. We consider first the attempted assignment of the bank deposit. The generally accepted common law rule of conflict of laws is that the effect of an assignment of a chose in action is determined by the law of the place where the assignment is executed. This is the rule laid down in the Restatement of Conflict of Laws.[3] It is, therefore, to be applied in the Virgin Islands in the absence of a local statute or rule to the contrary. For the Virgin Islands have adopted the rules of the common law of England as followed and understood in the United States[4] and we think that the district court in applying those rules is justified in following the well considered expressions of them which the American Law Institute has incorporated in its Restatements of the Law.
 
 
 10
 Here the assignment under discussion was of a chose in action to the extent that it related to the rents collected prior to January 31, 1947, and then on deposit in Mrs. Peiffer's account in the Virgin Islands National Bank. Wiesbaden, the place where the assignment was executed, was in the zone of Germany under occupation by the American military forces and was then under American Military Government. Among the laws promulgated by the Military Government and then in force in Wiesbaden was Law No. 53,[5] Article I of which expressly prohibited, except as duly licensed by or on instructions of the Military Government, any transaction with respect to or involving any foreign exchange assets owned by any person in Germany or any property wherever situated if the transaction was between or involved any person in Germany and any person outside Germany.[6] Article VII of Law No. 53 defined 'Foreign Exchange Asset' to include any property located outside Germany including specifically any bank balances outside Germany.[7] Article V of the same law provided that 'Any transfer effected in violation of this law and any agreement or arrangement made, whether before or after effective date of this law, with intent to defeat or evade this law, or the objects of Military Government, is null and void.'[8]
 
 
 11
 On January 31, 1947 Mrs. Peiffer and Iza Callwood resided in Wiesbaden and each was, therefore, a person in Germany. Callwood then resided in London and was, therefore, a person outside Germany. Mrs. Peiffer's deposit account in the Virgin Islands National Bank in St. Thomas was, of course, property located outside Germany and a foreign exchange asset within the meaning of Law No. 53. It is, therefore, clear that the attempted assignment of that bank account by Iza Callwood as attorney in fact for Mrs. Peiffer in Wiesbaden at that time was in direct violation of Law No. 53 and was null and void by virtue of the express provisions of Article V of that law.
 
 
 12
 Callwood argues that the assignment cannot be treated as invalid under Article V of Law No. 53 because it has not been shown that it was made with intent to defeat or evade that law. In making this contention, however, he misreads Article V which clearly was intended to invalidate two different types of transactions, the first, any transfer effected in direct violation of Law No. 53, and the second, any agreement or arrangement not in direct violation of the law but made with intent to defeat or evade it or the objects of Military Government. A transaction of either kind is expressly invalidated by Article V. In the present case the transfer sought to be effected by the assignment was in direct violation of the express prohibition of the law. It was, therefore, not necessary to establish its intent.
 
 
 13
 Callwood urges, however, that the validity of the assignment is supported by a license issued on January 12, 1951 by the Office of Alien Property of the Department of Justice of the United States unblocking the account of Mrs. Peiffer in the Virgin Islands National Bank and another issued April 15, 1953 by the Foreign Exchange Department of the Regional Central Bank of Hesse granting authority for the conclusion of the assignment of January 31, 1947 between Mrs. Peiffer and Callwood. We agree with the district court that neither of these licenses helps Callwood's cause. For the letter from the Director of the Office of Alien Property which transmitted the license of January 12, 1951 expressly informed him that the license was 'effective only insofar as United States law is concerned and such property, when owned by a person in the American, British or French zones of Germany, remains subject to the Military Government Laws of the respective countries.' And the license of April 15, 1953, which by its terms as extended was valid only until December 31, 1953, merely authorized the conclusion of the assignment between Mrs. Peiffer and Callwood within that period. It did not purport to validate the assignment which, as we have seen, was wholly null and void, but called for new action to conclude the transaction. Mrs. Peiffer was then deceased. Action to conclude the agreement would thus have had to have been taken by her executor Betz. But no action of any kind was taken between April 15 and December 31, 1953, under the authority of the license. It, therefore, can have no effect in this case, and it is not necessary to decide the authority of the Regional Central Bank of Hesse to issue it under Law No. 53.
 
 
 14
 Neither license, therefore, gives any life or validity to the unlawful assignment of January 31, 1947. It follows that Callwood's claim was rightly denied by the district court insofar as it involved that portion of the fund in controversy which was on deposit in the Virgin Islands National Bank on January 31, 1947, the date of the purported assignment.
 
 
 15
 It remains to consider the validity of the assignment insofar as it purported to assign to Callwood Mrs. Peiffer's right as life tenant to receive the rents of the St. Thomas realty in the future. As it turned out this involved his right to receive future rents for a period of less than six months, since Mrs. Peiffer died on July 11, 1947. The first question to be determined is again one of conflict of laws, by what law the validity of an assignment of future rents is to be decided. Here we are not dealing with an assignment of a chose in action but rather with the transfer of an interest in land. For the assignment, which appears to have been drawn by a German lawyer, describes Mrs. Peiffer as a usufructuary entitled for the rest of her life to the usufruct of real estate in Charlotte Amalie, which is the property of Elsa E. Callwood, and by it Mrs. Peiffer purports to assign to Callwood the exercising of her usufruct. It is evident that by the use of these civil law terms[9] it was intended to refer to what in common law phraseology would be described as Mrs. Peiffer's life estate in the realty in which Mrs. Callwood had an interest and to assign the former to Callwood subject to the latter. Accordingly we must follow the settled conflict of laws rule that the law of the situs of the land governs the validity of a transfer of an interest in the land,[10] including the interpretation and validity of powers of attorney to transfer such interests.[11]
 
 
 16
 We, therefore, turn to the law of the Virgin Islands to determine the validity of the assignment in question insofar as it sought to transfer Mrs. Peiffer's right to the usufruct of the real estate situate in St. Thomas. It is urged that Law No. 53 of the Military Government of the American zone of Germany must be regarded as applicable in the Virgin Islands by virtue of the fact that it was promulgated under the authority of the Government of the United States pursuant to its foreign policy.[12] We need not consider this question, however, since we are satisfied that under the local law of the Virgin Islands the assignment must be regarded as invalid.
 
 
 17
 It will be recalled that the assignment was executed by Iza Callwood as attorney in fact for Mrs. Peiffer pursuant to a written power of attorney. That power of attorney was in the most general terms, authorizing Iza Callwood 'to act on my behalf in all matters of whatever nature vis-a-vis private persons and vis-a-vis public authorities in a legally binding manner'. Iza Callwood testified that the power of attorney was given to her by her aunt shortly after the death of the latter's husband in 1942. The reason, she said, for giving it was that since her aunt could not speak German well enough to negotiate with the German authorities and people and her husband who spoke German was gone, it was necessary for her to empower Iza Callwood to carry on such negotiations for her. It will thus be seen that although the power was in most general terms it was given for a specific object, which had nothing whatever to do with Mrs. Peiffer's life estate in the St. Thomas realty.
 
 
 18
 There being no local statute on the subject the Virgin Islands follow the common law rule with respect to the interpretation of powers of attorney. That rule is well expressed in the Restatement of Agency, Section 37(1) as follows: 'Unless otherwise agreed, general expressions used in authorizing an agent are limited in application to acts done in connection with the act or business to which the authority primarily relates.' Applying this rule to the power of attorney here in question it must be concluded that it conferred power only to deal with the German authorities and individuals with relation to Mrs. Peiffer's affairs in Wiesbaden and that it did not confer authority to assign her life estate in the realty in the Virgin Islands. Accordingly, since Iza Callwood did not have authority under the power of attorney, properly interpreted, to execute the assignment of January 31, 1947 to Callwood, that assignment was rightly held by the district court to be invalid insofar as it sought to transfer Mrs. Peiffer's rights as life tenant of the real estate in St. Thomas. We conclude for the reasons stated that the district court was right in denying Callwood's claim in toto. We, therefore, need not consider the other grounds advanced in support of its action.
 
 
 19
 We pass then to the consideration of Mrs. Callwood's claim to a portion of the fund in controversy as assignee of Mrs. Peiffer by virtue of a verbal assignment alleged to have been made in August 1939. Mrs. Callwood testified that this was intended to be an assignment of that portion of the future rents of the St. Thomas properties which had originally been owned beneficially by her husband Richard E. C. Callwood.
 
 
 20
 As we have already pointed out in connection with the assignment of January 31, 1947 to Callwood the validity of an assignment of future rents, being an assignment of an interest in land, is to be determined by the law of the situs of the land, in this case the Virgin Islands. The applicable law in this regard is the statute of frauds which is in force in the Virgin Islands. That statute provides that no interest in land, other than a lease for a term not exceeding one year, may be assigned or transferred except by a deed of conveyance or other instrument in writing.[13] It follows that the verbal assignment relied upon by Mrs. Callwood to support her claim to the proceeds on deposit in the Virgin Islands National Bank of certain of the rents received after the assignment was invalid. The district court, therefore, properly rejected her claim based upon that assignment.
 
 
 21
 The claims of both Callwood and Mrs. Callwood to the fund as assignees of Mrs. Peiffer having thus been determined to be without merit it must follow that the fund belongs to the estate of Anna R. Peiffer, deceased, as contended by Betz, the domiciliary executor of that estate. It does not necessarily follow, however, that the fund should be awarded to Betz as such executor or even that as a foreign executor he is entitled to appear as a party in this litigation. We, therefore, turn to consider that question.
 
 
 22
 The statutory law of the Virgin Islands is silent as to whether a foreign executor or administrator may sue or be sued in the district court. The generally accepted rule of the common law is that, except as authorized by local statute, a foreign executor or administrator can not sue on a claim belonging to the decedent or be sued on a claim against the estate of the decedent in a state other than that of his appointment, even though he voluntarily appears.[14] The rule is based upon the public policy of not interfering with the administration of assets in a foreign state and of preventing local assets from being taken out of the state to the detriment of local creditors who might thus be compelled to go to a foreign state to obtain satisfaction of their claims.[15] Exceptions to this rule have been recognized, however, and foreign executors or administrators have been admitted as parties to litigation in the interest of justice under unusual circumstances where claims to property within the jurisdiction of the court are involved.[16] We think that the present case comes within this exception and that Betz, as domiciliary executor of the estate of Mrs. Peiffer, was properly joined as a party defendant in the interpleader proceeding. For that proceeding, of which the district court clearly had jurisdiction,[17] involved the determination of conflicting claims to the ownership of the bank account in question which is a chose in action having a situs for this purpose in the Virgin Islands where the debtor bank is subject to suit.[18] The account was being claimed by both Callwood and Mrs. Callwood adversely to the right of Mrs. Peiffer's estate. The sut, therefore, did not involve a question of administration of the estate but rather the question whether the bank account was property of the estate in St. Thomas which should be administered. It was within the power of the district court, we believe, to permit the foreign domiciliary executor of Mrs. Peiffer's estate to litigate this preliminary question.
 
 
 23
 When, however, the district court decided that the claims of Callwood and Mrs. Callwood under their respective assignments were invalid and that the bank account belonged to Mrs. Peiffer's estate, subject to Mrs. Callwood's claim for waste, the right of Betz, as foreign domiciliary executor, to continue to participate in the litigation became very much more doubtful. For Mrs. Callwood's claim for waste was against Mrs. Peiffer personally as life tenant and was, therefore, in reality a claim against her estate and not against the bank account as such, the latter being merely a possible source of payment. Her claim accordingly was prematurely made in the interpleader proceeding, as Betz had contended in his amended answer to her amended counterclaim. Clearly the orderly course to have pursued at this point would have been for the district court to award the fund to an ancillary administrator appointed by it to whom Mrs. Callwood's claim for waste and any other claims against the estate of Mrs. Peiffer might be presented and if rejected litigated in the district court as provided by the local law.[19] The district court did not pursue this course, however, but adjudicated the waste claim in the interpleader proceeding and, as we have seen, sustained the claim to the extent of $2,500.00, awarding that amount with counsel fees and costs to Mrs. Callwood out of the fund in controversy.
 
 
 24
 We do not regard with favor the short cut which the district court thus took in by-passing the ancillary administration called for by Virgin Islands law of this local asset of the estate of Anna R. Peiffer. Certainly the judgment of the district court gives no opportunity for other creditors of the estate, if any there are, to present their claims for payment out of this local asset before it is transmitted to the domiciliary executor in Germany. We will, therefore, direct that the amount due the estate be paid to an ancillary administrator to be appointed by the district court, for administration under the local law. But this does not mean that we think that Mrs. Callwood should have a second trial of her claim for waste. The district court has complete jurisdiction of the administration of decedent's estates in the Virgin Islands and the proof and allowance of claims against such estates. That jurisdiction is to be exercised in a proceeding in the nature of a suit in equity.[20] An action of interpleader is likewise equitable in nature.[21] It was, therefore, not beyond the power of the court in this action to adjudicate Mrs. Callwood's claim against Mrs. Peiffer's estate. Furthermore Mrs. Callwood chose to present and prosecute her claim in this proceeding and the district court acquiresced in having its jurisdiction invoked in that manner. The claim was fully litigated in a proceeding to which not only the domiciliary executor of the deceased debtor, Mrs. Peiffer, but also the person who claims to be her sold legatee, Iza Callwood, were parties. Mrs. Peiffer died nearly eight years ago and the parties entitled to share in her estate, whether as creditors or legatees, have as yet received no part of this Virgin Islands asset. We do not believe that they should be further delayed by requiring a second litigation before the district court of Mrs. Callwood's claim. We accordingly will consider the merits of the disposition which the district court made of that claim.
 
 
 25
 There is a generally recognized common law duty on the part of a life tenant to preserve the land and structures comprising the estate in a reasonable state of repair to the extent that the rents are sufficient to do so.[22] In comment c to section 139 of the Restatement of Property it is said:
 
 
 26
 'A repair or act of preservation is clearly within such duty whenever such repair or act is necessary to prevent a progressive deterioration of the land or structures or whenever the condition existing as a result of the failure to make such repair will amount to substantial deterioration of the land or structures from the condition in which such land and structures were at the time of the commencement of the estate for life. A repair necessary to make good ordinary wear and tear is not within this duty unless such repair is also within one of the two groups described in the next preceding sentence.'
 
 
 27
 The failure of the life tenant to perform this duty is termed waste and if there is such failure the remainderman or reversioner is entitled to recover from the life tenant's estate the resulting damages.[23] But as the comment from the Restatement which we have quoted indicates, the duty of the life tenant does not extend beyond keeping the premises in as good repair as they were when the life tenancy began.[24] He is not required to make extraordinary repairs or improvements.[25] It will be recalled that in this case Mrs. Peiffer by her deed of June 7, 1924 to Mrs. Callwood also assumed the contractual obligation 'to keep the properties in proper repair.' This, however, was no more than a restatement of the obligation which, as we have seen, the law imposed upon her as life tenant, and, therefore, gives no added support to Mrs. Callwood's claim.
 
 
 28
 Applying the rules of law which we have discussed to the facts shown by the evidence in this case we conclude that the district court erred in finding Mrs. Peiffer guilty of waste and in awarding $2,500.00 on that account to Mrs. Callwood. The buildings with respect to which the claim of waste is made are frame structures between 85 and 125 years old. Admittedly they were not in the best condition when Mrs. Peiffer died. But Mrs. Callwood wholly failed to sustain the burden of proving that their condition was worse then than when the life tenancy began. Indeed the only evidence before the court on this question was to the contrary. Kean, who as rental agent was necessarily familiar with the properties during the entire period, testified that they were in better condition when Mrs. Callwood took them over in 1947 than when he first began to manage them for Mrs. Peiffer in 1919. At that time, he said, they were all in poor condition and during the intervening years he gradually repaired them and brought them up to the fair condition in which they were when he turned them over to Mrs. Callwood after Mrs. Peiffer's death.
 
 
 29
 Mrs. Callwood testified that she had expended a total of $8,673.66 in making necessary repairs after she took over the properties and she also offered the testimony of six of the tenants as to the condition of the houses which they occupied and as to the repairs which were made and those which they thought should have been made. The evidence of the tenants was wholly inconclusive, however, since the condition of the houses at the beginning of the life tenancy was not shown to have been better than that described by them. The testimony of Mrs. Callwood as to her expenditures for repairs was likewise too indefinite to be conclusive as to the extent of the repairs which were required to remedy waste as distinguished from those required to improve the properties.[26] Moreover, Mrs. Callwood's own personal testimony was incompetent in any event under the Code of Laws of the Municipality of St. Thomas and St. John, Title III, Chapter 75, Section 4, which provides that no claim against a decedent's estate shall be allowed by the court 'except upon some competent or satisfactory evidence other than the testimony of the claimant.' The district court determined 'that a reasonable estimate of the permissive waste in this case is $2,500.' But a finding of damages for waste must have some factual basis in the evidence. It cannot be based solely on an estimate. Here there is in the competent evidence no support for the district court's finding. We conclude that Mrs. Callwood's counterclaim for waste was not proved and should have been disallowed.
 
 
 30
 A final word is required as to the action of the district court in awarding to three of the parties sums out of the fund in controversy as compensation for attorney's fees and costs. The Virgin Islands National Bank was awarded $400.00 on this account. As the defendant in this action it secured the order of the court directing the interpleader and promptly paid the fund in controversy into court. It acted fairly and is entitled to costs and reasonable counsel fees out of the fund.[27] Since Mrs. Callwood's claim must be disallowed we need not consider whether if it had been allowed she would have been entitled to counsel fees out of the fund belonging to the decedent's estate in addition to her claim as a creditor. The remaining allowance is to the estate of Mrs. Peiffer, $1,400.00 for attorney's fees and costs. The fund here in controversy, less the allowances properly made by the court, must be awarded to an ancillary administrator of the estate of Anna R. Peiffer, deceased, for administration under Virgin Islands law. In that administration proceeding in the district court all claims against the estate, including the claims of counsel for Betz, the domiciliary executor, and Iza Callwood, the sole legatee, for fees and costs incurred in the present interpleader proceeding, may be presented, considered and allowed as provided by the Code of Laws of the Municipality of St. Thomas and St. John, Title III, Chapters 75, 77 and 78. The allowance of these attorney's fees will, therefore, be disallowed in this action without prejudice. The taxable costs of Betz will, however, be allowed against the plaintiff Callwood.
 
 
 31
 In his responsive pleading in this case the defendant Kean claimed $418.00 which he had paid to Mrs. Callwood in the case of Callwood v. Kean, 3 Cir., 189 F.2d 565. The district court disallowed this claim as filed too late. It does not appear that it is a claim against Mrs. Peiffer's estate but if it is in reality such a claim it may be presented in the ancillary administration of her estate.
 
 
 32
 The judgment of the district court will be vacated and the cause will be remanded with directions to enter a judgment awarding $400.00 to the Virgin Islands National Bank for attorneys' fees and costs and $7,104.62, the balance of the fund in controversy (less the sum of $201.50 paid to the official reporter) to the ancillary administrator of the estate of Anna R. Peiffer, deceased, appointed by the district court; the costs of August Betz, executor of the estate of Anna R. Peiffer, deceased, in the district court and in this court to be paid by the plaintiff, Clifford W. L. Callwood.
 
 
 
 [1]
 Callwood v. Kean, 3 Cir., 1951, 189 F.2d 565
 
 
 [2]
 Richard E. C. Callwood's will provided that Anna Peiffer should keep 'the properties in proper repair.' By her deed of June 7, 1924, she agreed to 'keep the properties in proper repair.'
 
 
 [3]
 Restatement of Conflict of Laws § 350 . See United Cent. Life Ins. Co. v. Woods, 1894, 11 Ind.App. 335, 37 N.E. 180, 39 N.E. 205; Republica de Guatemala v. Nunez, (1927) 1 K.B. 699; Newspaper Readers Service v. Canonsburg Pottery Co., 3 Cir., 1945, 146 F.2d 963, 966. Dix v. Bank of California Nat. Ass'n, D.C.Cal.1952, 113 F.Supp. 823, affirmed Dix v. Pineda, 9 Cir., 205 F.2d 957. See also 2 Beale, Conflict of Laws, § 350.1
 
 
 [4]
 Code of Laws of the Municipality of St. Thomas and St. John, Title IV, Chapter 13, Section 6; Code of Laws of the Municipality of St. Croix, Title IV, Chapter 13, Section 6
 
 
 [5]
 12 FR 7003, 10 CFR, 1947 Supp. § 3.40
 
 
 [6]
 10 CFR, 1947 Supp. § 3.40 (a)
 
 
 [7]
 10 CFR, 1947 Supp. § 3.40 (g)(4)
 
 
 [8]
 10 CFR, 1947 Supp. § 3.40 (e)
 
 
 [9]
 2 Bouv. Law Dict. Rawle's Third Revision, p. 3380
 
 
 [10]
 Restatement of Conflict of Laws, § 215
 
 
 [11]
 2 Beale, Conflict of Laws, § 233.2
 
 
 [12]
 Compare In re Muller's Estate, 1951, 199 Misc. 745, 104 N.Y.S.2d 133; Kent Jewelry Corp. v. Kiefer, Sup.1952, 119 N.Y.S.2d 242
 
 
 [13]
 Code of Laws of the Municipality of St. Thomas and St. John, Title II, Chapter 9, Sections 1 and 3. Code of Laws of the Municipality of St. Croix, Title II, Chapter 9, Sections 1 and 3
 
 
 [14]
 Restatement of Conflict of Laws §§ 507, 512, 513
 
 
 [15]
 Restatement of Conflict of Laws, § 512, comment a, § 513 , comment a. See Mothland v. Wireman, 1831, 3 Pen. & W., Pa., 185; Hargrave v. Turner Lumber Co., 1940, 194 La. 285, 193 So. 648
 
 
 [16]
 Laughlin v. Solomon, 1897, 180 Pa. 177, 36 A. 704; Kirkbride v. Van Note, 1937, 275 N.Y. 244, 9 N.E.2d 852, 112 A.L.R. 243; Sylvania Industrial Corp. v. Lilienfield, 4 Cir., 1943, 132 F.2d 887, 145 A.L.R. 612. See also 13 American & English Encyclopaedia of Law, 2d ed., p. 960; Goodrich, Conflict of Laws, 3d ed., pp. 562-565
 
 
 [17]
 Jurisdiction in interpleader was conferred by the Code of Laws of the Municipality of St. Thomas and St. John, Title III, Chapter 3, Section 13, and by the grant of general equitable power to the district court by the Organic Act, 48 U.S.C.A. § 1541 et seq. Compare Mogul Transp. Co. v. Larison, 1947, 181 Or. 252, 181 P.2d 139, a case which considers the Oregon precursor of the Virgin Islands statute. It was also conferred in this case of diverse citizenship by title 28 United States Code, § 1335
 
 
 [18]
 To ascribe a situs to an intangible, such as a debt, is of course to indulge in a legal fiction. But it is a useful fiction which the law frequently employs. See Restatement of Conflict of Laws, § 108 ; Blackstone v. Miller, 1903, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439; Harris v. Balk, 1905, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023, 3 Ann.Cas. 1084
 
 
 [19]
 Code of Laws of the Municipality of St. Thomas and St. John, Title III, Chapter 75, Section 4
 
 
 [20]
 Code of Laws of Municipality of St. Thomas and St. John, Title III, Chapter 71, Section 3
 
 
 [21]
 48 C.J.S., Interpleader, § 2 ; State of Texas v. Florida, 1939, 306 U.S. 398, 405, 59 S.Ct. 563, 83 L.Ed. 817; Mogul Transp. Co. v. Larison, 1947, 181 Or. 252, 181 P.2d 139
 
 
 [22]
 Restatement of Property, § 139
 
 
 [23]
 Restatement of Property, § 139, comment g
 
 
 [24]
 Murch v. J. O. Smith Manufacturing Co., 1890, 47 N.J.Eq. 193, 20 A. 213
 
 
 [25]
 Restatement of Property, § 139, comment e
 
 
 [26]
 See In re Stout's Estate, 1935, 151 Or. 411, 50 P.2d 768, 101 A.L.R. 672
 
 
 [27]
 First Nat. Bank v. Reynolds, 1928, 127 Me. 340, 143 A. 266, 60 A.L.R. 712; Globe Indemnity Co. v. Puget Sound Co., 2 Cir., 1946, 154 F.2d 249; Warner v. Florida Bank & Trust Co., 5 Cir., 1947, 160 F.2d 766