Daniel E. Fitzpatrick, J.
Petitioner Mary Ruvolo moves to confirm the report dated December 9, 1964, of Honorable Samuel S. Tkipp, the Special Referee of this court, and for judgment in accordance therewith and the supporting affidavit of her attorney William J. Murphy, Esq. The respondent the Long Island Rail Road Company likewise moves for the confirmation of said report conditioned, however, “ upon (1) Petitioner effecting proper personal service of the notice of petition, Referee’s report and stipulation of settlement in this proceeding on Household Finance Company, Chase Manhattan Bank, Busch *138 Jewelry Company and Chambers Loan Company; and (2) upon Petitioner filing proof of snch service with this Court; and (3) upon passage of a reasonable time for those served to be heard ’ ’.
Inasmuch as this litigation involves an area in which there is a dearth in this State of clarifying decisional law, the material portions of the learned Special Referee’s report are herewith set forth in full:
“ By an order dated July 3, 1964, made by Honorable Daniel E. Fitzpatbick, an acting Justice of this court, 1 all matters encompassed by the above-entitled Special Proceeding ’ were referred to the undersigned ‘ to hear and report as to the proper claimants in funds now held by the Respondent to the credit of Vincent Ruvolo or whether the Petitioner is entitled thereto ’.
“ The foregoing order was made in a special proceeding instituted pursuant to CPLR 5225 (sulxl. [b]) by Mary Ruvolo. It appears from her petition, verified May 2.1, 1964, that she had obtained in this court a judgment of divorce from Vincent Ruvolo, which became final on October 25, 1961 (Queens County Clerk’s Index No. 445-1961). This judgment awarded the custody of the two children of the parties to the petitioner with alimony and child support of $45 a week. On September 26, 1961, petitioner obtained an order permitting her to docket a money judgment against her former husband for $1,490, plus interest, representing* unpaid arrears of alimony and child support, and on December 26, 1962, she obtained another order for leave to docket a money judgment for further arrears of $2,835, plus interest.
“ On February 13, 1963, petitioner filed, in the office of the Sheriff of the City of New York, Queens County Division, two executions pursuant to section 687-a of the Civil Practice Act to satisfy the foregoing judgments and Sheriff’s fees by levying on an alleged debt owed by the Long Island Rail Road Co. to her former husband. Again, on March 1, 1963, she filed two new executions with said Sheriff to satisfy the aforesaid two judgments out of the indebtedness of the Long Island Rail Road Co. to her said former husband Vincent Ruvolo. On the filing of the executions on both occasions copies thereof were served personally upon the general attorney for said railroad at its office in Jamaica, New York.
“ The alleged indebtedness of the Long Island Rail Road Co. is based upon an action that petitioner’s former husband, Vincent Ruvolo, brought in the United States District Court for *139 the Eastern District of New York for personal injuries sustained in the course of his employment with the railroad on August 20, 1960. He was represented in that action by an attorney named Henry II. Sternberg, Esq. The case came on for trial in February, 1963, and was finally settled on February 21, 1963, for the sum of $8,500. It is this fund which is the subject of the instant proceeding to determine the rights of the petitioner under her judgments and to direct the Long Island Rail Road Co. to pay over to the Sheriff, or to her, such part of the fund in its possession which this court determines is rightfully hers.
‘ ‘ This matter was noticed for a plenary hearing before me on October 19, 1964. The Long Island Rail Road Co., by its representative, stated on the record that it ‘ is only a stakeholder in these proceedings. The Rail Road seeks a protective order before paying out the amount of settlement. The Long Island Rail Road requests notice of all subsequent hearings. ’
“It appeared at said hearing that Vincent Ruvolo had filed a petition in bankruptcy in the United States District Court for the Southern District of Florida and that neither Walter A. Hoffman, the duly appointed trustee in bankruptcy, nor certain judgment creditors had been given notice of the hearing before me, or had all claimants who were given notice appeared in court to make proof of their claims. Accordingly, I adjourned the hearing for all purposes to December 7, 1964, at 9:45 a.m. I also directed the attorney for the petitioner to give written notice of the adjourned hearing to said trustee in bankruptcy and all claimants and judgment creditors of Vincent Ruvolo, which notice was to contain a summary of the issues presented in this special proceeding.
‘ ‘ At the opening of the hearing on December 7, 1964, there was received in evidence the notice of hearing dated October 23,1964 with proof of service of copies upon the persons named in the affidavit of service by certified mail, sworn to on November 25, 1964. The attorney for the railroad stated on the record that all persons who had filed claims to the fund were included in the foregoing affidavit of service as having been mailed the notice of hearing on December 7,1964.
“ I find that the summons and complaint in the action against the railroad was served on May 23,1961; that this was an action under the Federal Employers’ Liability Act to recover damages for personal injuries sustained by Vincent Ruvolo on August 20,1960 as the result of the negligence of the railroad; that this action was contested; that settlement negotiations between the plaintiff’s attorney, Henry H. Sternberg, Esq., and representa *140 tives of the railroad culminated in an offer of $8,500 on August 16, 1961 which Vincent Ruvolo rejected unless he received such amount ‘ net to himself ’; that this' offer was never withdrawn by the railroad and was finally accepted by Mr. Ruvolo on February 21, 1963, on which date the action was marked ‘ settled ’. Mr. Ruvolo executed a general release on that date, as well as an affidavit stating: ‘ I am the plaintiff in the above captioned action which is being settled for the sum of Eight Thousand Five Hundred ($8,500.00) Dollars and agree and consent to such settlement. ’ Thus it is clear that it was not until February 21, 1963 that Mr. Ruvolo’s pending untried action in negligence was terminated by his acceptance of the railroad’s offer of $8,500 and it is this sum which on that date became a ‘ debt ’ within the purview of CPLR 5201.
“ On August 2,1963 Vincent Ruvolo filed a voluntary petition in bankruptcy in the United States District Court for the Southern District of Florida and Walter A. Hoffman was duly appointed trustee. By order to show cause dated June 25, 1964, in ancillary proceedings instituted in the United States District Court for the Eastern District of New York, Vincent Ruvolo sought an order requiring the railroad to turn over to Walter A. Hoffman, the trustee in bankruptcy, the foregoing settlement, stating in his petition sworn to June 24, 1964 that his action against the railroad ‘ came on for trial in February of 1963, and on February 21, 1963, was settled for the sum of $8,500.00.’ By order dated September 10, 1964 this relief was denied and the stay granted in the order to show cause vacated upon the ground that any application in ancillary proceedings had to be instituted by the duly appointed trustee and not the bankrupt. I find that to this date no such proceedings were ever instituted by said trustee although he and his attorney were given notice of the proceedings in this court.
“ It has been held that when a lien is obtained more than four months prior to the filing of a petition in bankruptcy, it is not only not to be deemed null and void on adjudication in bankruptcy but its validity is recognized. When a lien is obtained within four months, the property is discharged therefrom. (Metcalf v. Barker, 187 U. S. 165, 174; Matter of Continental Midway Corp., 185 F. Supp. 867.) In other words, valid liens obtained more than four months prior to bankruptcy are valid and enforcible and a trustee in bankruptcy sueeeds in title to the bankrupt’s estate only to the extent that such assets have not been previously subjected to such valid liens, and subdivision (e) of section 107 of title 11 of the United States Code provides: ‘ For the purpose of any recovery or avoidance under *141 this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction.’
“ I find the following liens to have been duly obtained more than four months prior to Mr. Ruvolo’s petition in bankruptcy on August 2, 1963:
“1. The attorney’s lien of Henry H. Sternberg, Esq., who is the attorney of record in the negligence action which resulted in the settlement. Mr. Sternberg was retained by Mr. Ruvolo on February 2,1961 on the basis of 30% 1 of the sum recovered, whether recovered by suit, settlement or otherwise ’. Mr. Stern-berg had out-of-pocket disbursements totaling $478.50 necessarily expended in the prosecution of the action. Thirty per cent of the balance of the settlement remaining after deducting the foregoing out-of-pocket disbursements amounts to $2,406.45. Thus said attorney had a charging lien on the settlement to the extent of $2,884.95 which was not invalidated by bankruptcy. (Matter of Prudence Co., 96 F. 2d 157, 160, cert. den. sub nom. McGrath v. Davison, 305 U. S. 616; Matter of San Juan Gold, Inc., 96 F. 2d 60; Schoenherr v. Van Meter, 215 N. Y. 548, 551, 552, 553.)
“ 2. The Railroad Retirement Board, a United States agency, advanced to Mr. Ruvolo, pursuant to subdivision (o) of section 12 of the Railroad Unemployment Insurance Act (U. S. Code, tit. 45, § 362, subd. [o]), as sick benefits arising out of the injuries sustained on August 20, 1960, the total sum of $2,213.40, the last payment having been made for the period ending on November 28, 1961. This agency has a lien for that sum, without interest, entitled to priority and such lien likewise is not affected by Mr. Ruvolo’s subsequent petition in bankruptcy. (Lewis v. Railroad Retirement Bd., 256 Ala. 430, cert. den. 343 U. S. 919; United States v. Luquire Funeral Chapel, 199 F. 2d 429; U. S. v. Hall, 116 F. Supp. 47.)
‘1 The following judgment creditors of Mr. Ruvolo claimed that they had judgment liens enforcible against the balance of $3,401.65 remaining from the $8,500 settlement fund after the payment of the foregoing $2,884.95 to the attorney and $2,213.40 to the Railroad Retirement Board, or a total of $5,098.35:
“ (a) Interboro Personal Loan Co. docketed a judgment against Mr. Ruvolo for $632.55 on February 2, 1961 in the Municipal Court of the City of New York, Borough of Manhattan, Second District. On February 3, 1961 a property exe *142 cution was issued to a Marshal of the City of New York with directions ‘ to levy upon the debts and causes of action owed by or existing against Long Island Railroad ’ in favor of Mr. Ruvolo arising out of ‘ Award due * * * for back wages and settlement of claim for personal injuries. ’ On August 18, 1961 a third-party subpoena was served upon the Long Island Rail Road restraining, as provided by section 781 of the Civil Practice Act, the transfer of property and moneys belonging to the judgment debtor.
“ (,b) Industrial Bank of Commerce docketed a judgment against Mr. Ruvolo for $750.90 on March 30, 1961 in the Municipal Court of the City of New York, Borough of Manhattan, First District, and served a third-party subpoena upon the Long Island Rail Road on September 18, 1961 containing the restraint provided in section 781 of the Civil Practice Act against transferring property and moneys belonging to the judgment debtor. On June 17, 1963 Leon Bloom, a Marshal of the City of New York, served upon the Long Island Rail Road an execution against the property of Mr. Ruvolo and a levy and certification. By order dated August 6, 1963 the Civil Court of the City of New York, County of Queens, denied this judgment creditor’s motion to direct the railroad to pay the judgment against Mr. Ruvolo out of the funds belonging to him held pursuant to the aforesaid third-party subpoena 1 without prejudice upon the serving of the motion papers on the other creditors of the judgment debtors. ’ A subsequent similar motion made by this judgment creditor, as well as a separate motion made by the attorney Henry H. Sternberg, Esq. to fix his compensation in the sum of $2,550 plus disbursements of $478.50 for legal services rendered for and on behalf of the judgment debtor in the action which resulted in the settlement above described, were denied by order of the Civil Court of the City of New York, County of Queens, with the following memorandum: ‘ The court cannot act on these motions in view of the fact that the judgment Debtor has been declared a bankrupt and a trustee having been appointed. It is to be noted the trustee is about to commence ancillary proceedings in this jurisdiction. ’
“ (c) Chemical Bank New York Trust Co. docketed a judgment against Mr. Ruvolo for $1,450.81 on July 20, 1961 in the Municipal Court of the City of New York, Borough of Manhattan, Fourth District. On September 13, 1961 the Long Island Rail Road was served with a third-party subpoena containing the restraint provided by section 781 of the Civil Practice Act against transferring property and moneys belonging *143 to the judgment debtor. By order dated March 18, 1963 the injunctive provisions of said subpoena were ‘ extended to the amount the third party has agreed to pay to the judgment debtor in settlement of the judgment debtor’s action against the third party and remain in full force and effect for two years from the date of this order. ’ Said order was served on the Long Island Bail Boad on March 27, 1963.
“(d) Petitioner Mary Ruvolo’s judgment for arrears of alimony and child support in the sum of $1,490 and interest was docketed in the office of the County Clerk of Queens County on September 22, 1961, and her judgment for $2,835 and interest was similarly docketed on December 28, 1962. Executions thereon were filed with the Sheriff of the City of New York, Queens County Division, on February 13, 1963 and again on March 1, 1963, and levies were made by the Sheriff on a debt owed by the Long Island Rail Road Co. to Mr. Buvolo by virtue of the settlement of the claim made by him against said railroad. By an order of this court dated June 11, 1963 the execution served by the Sheriff on the Long Island Bail Boad was extended and the service of a copy thereof was acknowledged by said railroad on June 14, 1963. A similar extension was directed by the court’s order dated December 4, 1963 and a certified copy thereof served on the railroad by mail certified on December 6, 1963.
“ In Matter of Continental Midway Corp. (185 F. Supp. 867, 870, supra), decided by6 the United States District Court, D. Maryland, Bankruptcy Division, on July 28, 1960, the court held that while section 107 of title 11 of the United States Code does not expressly deal with liens obtained against the property of the bankrupt ‘ more than four months prior to the bankruptcy ’, it was held in Straton v. New (283 U. S. 318) ‘ that it is the clear implication of the law that such latter liens are valid and enforceable and that the determination of their validity is dependent upon the laws of the State where the property is situated. ’ It thus follows that the question as to the validity of the judgment liens here claimed by the foregoing judgment creditors must be determined by the controlling law and practice of New York.
‘1 Under the provisions of CPLB 10003, the steps taken by the several judgment creditors prior to September 1, 1963 to establish the status of judgment lienors, are governed by the provisions of the Civil Practice Act which was superseded by the CPLB, effective on September 1, 1963. Thus petitioner’s executions on her two judgments totaling $4,325 besides interest rendered such judgments liens on the settlement fund from *144 the time of their delivery to the Sheriff on March 1, 1963. (Matter of Flushing Queensboro Laundry, 90 F. 2d 601; Baker v. Hull, 250 N. Y. 484, 488; American Laundry Mach. Co. v. Simon, 255 App. Div. 203.) Actual possession by the Sheriff or removal from the premises of the debtor was in no way required. ‘ Once levied upon the property is deemed to be in custodia legis.’ (Matter of Livingston, 30 Misc 2d 71, 74, affd. on other grounds 14 A D 2d 264.)
“ Similarly the service of the third-party subpoenas by the other judgment creditors hereinbefore described rendered their judgments liens not affected by Mr. Buvolo’s proceedings in bankruptcy since such liens were acquired more than four months before the filing of the petition in bankruptcy. (Matter of Wickwire Spencer Steel Co. v. Kemkit Scientific Corp., 292 N. Y. 139, 142.)
“ For the reasons already stated, none of the judgment liens enumerated above was dissolved or affected by Mr. Buvolo’s bankruptcy and each of them is, therefore, entitled to enforce them against the balance of the settlement fund.
“ The judgment lienors, however, disputed among themselves as to which had priority as a vigilant creditor. Accordingly, I initiated negotiations among the attorneys representing these judgment lienors looking to the amicable settlement of their dispute as to which had priority over the other. After considerable discussion, it was stipulated, consented and agreed on the record in open court that out of the balance of $3,401.65 of the settlement fund petitioner Mary Buvolo will
receive $2,576.65
Chemical Bank New York Trust Co. 400.00
Industrial Bank of Commerce 300.00
Interboro Personal Loan Co. 125.00
Total $3,401.65
“Beneficial Finance Co. of New York, Inc. claimed through its attorney that on June 29, 1961 it had served on the Long Island Bail Boad a wage assignment for $294, but had neither obtained a judgment therefore nor otherwise pursued any remedy provided by law for the collection of that amount. Under these circumstances, it is my opinion that this corporation is not entitled to participate in any way in the $8,500 settlement fund here involved.”
It is clear from the foregoing that, assuming arguendo the validity of the contentions of the respondent the Long Island Bail Boad Company, it is beyond cavil that Henry H. Stern- *145 berg, Esq., the attorney who represented Vincent Ruvolo in the negligence action against the respondent, has priority as a matter of law in respect of his charging lien of $2,884.95 upon the settlement that was effected through his efforts. Similarly, the Railroad Retirement Board, a United States agency, has priority for the $2,213.40 it advanced to Mr. Ruvolo as sick benefits arising out of the injuries he sustained. Only the balance of $3,401.65, therefore, may be affected by the objections interposed by the respondent for the first time, upon receiving the Special Referee’s report.
CPLR 5225 (subd. [b]) which governs the payment or delivery to a judgment creditor of money or property belonging to the judgment debtor in the hands of a third person, or a “ garnishee ” as defined by CPLR 105 (subd. [h]), and CPLR 5227 which governs the payment to a judgment creditor of debts owed by the judgment debtor by a third person or garnishee, are related provisions. Both sections require a special proceeding to be commenced by a judgment creditor against the garnishee who must be served in the same manner as a summons in an action (CPLR 403, subd. [c]). Under both sections notice of the proceeding must “ also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested ’ ’. There is no requirement that any other persons interested in the money, property or debt involved should be made parties to the special proceeding.
In the case at bar, the special proceeding was properly commenced by the personal service of the notice of petition and the petition itself upon the garnishee, the respondent the Long Island Rail Road Co., and by the service thereof upon the judgment debtor Vincent Ruvolo by certified mail, return receipt requested. Petitioner also served the papers by ordinary mail upon the Sheriff of the City of New York, the Railroad Retirement Board, Henry H. Sternberg, Esq., the attorney who had represented Mr. Ruvolo in the negligence action and W. A. Hoffman, Jr., the trustee in bankruptcy, who had been appointed in the bankruptcy proceeding that Mr. Ruvolo had instituted in the State of Florida.
On the return date only the respondent Long Island Rail Road Co. appeared. It submitted affidavits praying that such relief as is granted include provisions for its protection against claims of other individuals and entities that may have rights against it similar to those of the petitioner. In addition to listing the claim of the Railroad Retirement Board and the charging lien of Mr. Sternberg, one of the affidavits stated *146 that Chemical Bank New York Trust Company served an execution on September 13, 1961, and that the file in this case ‘ ‘ reflects that Household Finance Corp. served a third-party subpoena on September 19, 1961, and an execution on January 15, 1962; an execution against wages was served by Chase Manhattan on October 31,1961- — this may not be an outstanding debt since it is not listed under the creditors; Beneficial Finance served an execution on June 29, 1961; Industrial Bank of Commerce served an execution on April 4, 1961 and a third-party subpoena on September 12, 1961; Busch Jewelry Co. served an execution on February 28, 1961; Chambers Loan served an execution on December 19, 1960; Interboro Personal Loan Co. served a wage assignment on December 2, 1960 and a third-party subpoena on October 14, 1961.”
The cross motion now before the court concerns itself with the following ‘ ‘ claimants ’ ’ and the amounts of their claims:
(a) Household Finance Company.......... $931.61
(b) Chase Manhattan Bank................ 318.64
(c) Busch Jewelry Company............... 518.10
(d) Chambers Loan Company.............. 214.75
Total ..............................$1,983.10
Inasmuch as these four claimants were not required to be joined as parties to petitioner’s special proceeding, it is not defective merely because at the direction of the Special Referee they were notified of the adjourned hearing by certified mail. They were not entitled to any notice either of the proceeding or of the hearing. If the proceeding is not invalidated by failure to give notice, a fortiori, it must be valid when actual notice was in fact given to said claimants. That notice afforded them an opportunity to intervene, since both CPLR 5225 (su-bd. [b]) and 5227 provide: “The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.”
Proceedings under CPLR 5225 (subd. [b]) and 5227 are plenary in that the court can adjudicate rights and interests in the debt or fund which is the subject matter of the proceeding. Third parties interested therein may intervene formally to determine their claims thereto {id.). Informal intervention as was done by the third parties mentioned in the Special Referee’s report is as effective. (See Matter of Powley v. Dorland Bldg. Co., 281 N. Y. 423, 428; Matter of Malloy, 278 N. Y. 429; Stevenson v. News Syndicate Co., 302 N. Y. 81, 87.) The garnishee or third person, if in doubt as to the *147 possible rights of persons other than the parties to the pending special proceeding brought by a judgment creditor, can probably interplead such other claimants (CPLR 1006) if they failed to intervene, and thus, in a single proceeding obtain a determination of all claims to the debt or fund it owes to the judgment debtor. This, the respondent has failed to do. Instead it has resorted to the cross motion following the filing of the report of the reference in which it had participated and co-operated by furnishing a list to petitioner’s attorney of all those who, according to its records, had claimed an interest in the moneys due the judgment debtor Vincent Ruvolo, so that, as directed by the Special Referee, a notice of the adjourned hearing and a summary of the proceedings may be sent by certified mail to each and every interested individual or entity.
The Special Referee properly applied the provisions of the Civil Practice Act to the steps taken by the judgment creditors involved, prior to September 1, 1963, the effective date of the superseding CPLR to establish status as lienors. (CPLR 10003.) He also correctly found that it was not until February 21, 1963, that the judgment debtor’s pending action to recover damages for personal injuries was terminated by his acceptance of the settlement offer of $8,500, and that it was only then that a debt or fund came into being. Former section 687-a of the Civil Practice Act contemplated as the subject of execution only those obligations which were matured at the time of levy. (Lyons Falls Farmers’ Co-op. Assn. v. Moore, 158 N. Y. S. 2d 1013, 1015-1016; Matter of Dannenberg v. Leopold & Co., 188 Misc. 250; 8 Carmody-Wait, New York Practice, § 226, pp. 320-321.) The law is the same under CPLR 5201 (subd. [a]) except for the broadening last sentence thereof: “ A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state. ’ ’ Section 41 (subd. 1) of the Personal Property Law, however, provides, in pertinent part that ‘ ‘ Any claim or demand can be transferred, except in one of the following cases: (1) Where it is to recover damages for a personal injury.” (General Acc. Fire $ Life Assur. Corp. v. Zerbe Constr. Co., 269 N. Y. 227, 231; Matter of Walton, 20 AD 2d 386, 389; Grossman v. Schlosser, 19 AD 2d 893; American Hemisphere Marine Agency v. Kreis, 40 Misc 2d 1090; City of New York v. Barbato, 5 N. Y. S. 2d 125,127; see, generally, Prof. David D. Siegel’s Practice Commentary in McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 5201, pp. 2L-25.)
Since executions and levies were made against the debt or fund owed by the respondent to the judgment debtor 'only with respect to petitioner’s judgments totaling $4,325, exclusive of *148 interest subsequent to its maturity on February 21, 1963, and an injured person’s cause of action for personal injuries cannot be transferred or assigned, it is difficult to perceive any basis for the respondent’s apprehension that the distribution of the $3,401.65, in accordance with the Special Referee’s report, could subject it to the risk of future liability to the four “ sleeping claimants ”. That petitioner agreed, at the hearing before the Special Referee, by way of settlement of the question of priority, to relinquish to three other judgment creditors $825 of the balance of $3,401.65 of the $8,500 fund owing by respondent, when she -could have insisted on the entire balance to satisfy her judgments aggregating $4,325, exclusive of interest, is not material.
In addition, one of such claimants, Household Finance Company, not only defaulted in responding to the notice of hearing which was mailed to it at the Special Referee’s direction but even defaulted in responding to the cross motion now before the court, to which it was named a party, and its attorney served by mail with the notice of cross motion and the papers annexed thereto. Another of such claimants, Busch Jewelry Co., in fact appeared by its attorney at 'the first hearing before the Special Referee on October 19, 1964 but thereafter defaulted, notwithstanding that it had notice that the interests of all claimants to the fund would be litigated at the hearing on December 7, 1964. (See Bennett v. Kazvini, 279 App. Div. 860.) Still another claimant, Chase Manhattan Bank, concerning whom respondent’s attorney stated, in his original opposing affidavit: ‘ ‘ this may not be an outstanding debt since it is not listed under the creditors ”, served an execution against wages on October 31, 1961.
While intervention is not mandatory under the present statutes, although perhaps it should be when a notice such as is here involved has been served, and the absent claimants may not be barred from instituting their own special proceedings for which, unfortunately, there appears to be no short-time limitation notwithstanding the notice given to these claimants of the instant proceeding, rightly or wrongly, OPLR article 52 contemplates a “ race of diligence ”.
Accordingly, the cross motion of the respondent is denied. The petitioner’s motion to confirm the report of the Special Referee is in all respects granted and judgment will be entered in accordance. Out of the $2,576.65, to which petitioner is entitled, $133.83 will be paid as poundage directly to the Sheriff of the City of New York and the balance of $2,442.82 to the petitioner and William J. Murphy as attorney.