**RCA CORP., Warner Bros. Records, Inc., and RSO Record, Inc., Plaintiffs,**

v.

**George TUCKER, Super–Dupers, Inc., Frank Martino and Ramart Printing Corp., Defendants.**

**CASABLANCA RECORDS & FILMWORKS, INC., Plaintiff,**

v.

**George TUCKER, Super–Dupers, Inc., Frank Martino and Ramart Printing Corp., Defendants.**

**Nos. 79 CV 983, 79 CV 1034.**

United States District Court, E.D. New York.

Oct. 5, 1988.

David O. Wright, Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City, for petitioners.

H. Elliot Wales, New York City, for stakeholder RHM Industries.

Marlene M. Remmert, Punta Gorda, Fla., for claimant Hannelore Martino.

### MEMORANDUM AND ORDER

DEARIE, District Judge.

Petitioners in this turnover proceeding moved for summary judgment. In a Report and Recommendation, the Hon. Allyne R. Ross, United States Magistrate, recommended that the motion be granted. Two parties with an interest in the *res* filed timely objections to the Magistrate's report. The Court accepts Magistrate Ross' recommendation, and adopts her report (reproduced below) as the opinion of the Court, adding only these few comments upon consideration of the objections.

■ Objectors argue that application of New York law in this proceeding would violate the full faith and credit clause of the United States Constitution. This contention is incorrect. A forum state's choice of its own law is constitutional so long as the forum state has significant contacts with the litigation. *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 639–40, 66 L.Ed.2d 521 (1981) (plurality opinion); *id.* at 332, 101 S.Ct. at 650 (Powell, J. dissenting). That test is easily satisfied here. Objectors' interpretation of the full faith and credit clause would require New York courts to apply foreign law anytime foreign contacts to the litigation exist, even at the cost of disregarding New York law and public policy. The Constitution compels no such result. *Id.* at 322–23, 101 S.Ct. at 645 (Stevens, J., concurring).

■ Objectors also argue that Magistrate Ross pre-judged the choice of law question by determining, at the outset, that the conveyance was fraudulent. Contrary to objectors' contention, however, the Magistrate did not conclude that the conveyance was fraudulent, and therefore that conflicts principles applicable to tort cases should govern. Rather, the Magistrate correctly concluded that the core issue in this proceeding was *whether* the conveyance was fraudulent as to petitioner, not whether the conveyance was valid (as a matter of property law) as between the Martinos. Because different characterizations of the suit imply different choice of law rules that in turn imply application of different substantive law, the Magistrate was required to choose between the competing characterizations. In the Court's view, she chose correctly.

The Clerk of the Court is directed to enter judgment in accordance with Magistrate Ross' attached Report and Recommendation.

SO ORDERED.

## REPORT AND RECOMMENDATION IN TURNOVER PROCEEDINGS IN AID OF EXECUTION OF JUDGMENT

ALLYNE R. ROSS, United States Magistrate:

Petitioners, RCA Corp., et al., bring these turnover proceedings in aid of execution of a 1986 judgment for approximately 1.3 million dollars entered in their favor against judgment debtors Frank D. Martino, Sr. ("Martino") and Ramart Printing Corp. ("Ramart"), a now dissolved New York corporation. The two post-judgment proceedings are brought under Rule 69, Fed.R.Civ.P., and N.Y.Civ.Prac.Law §§ 5225 and 5227 (McKinney 1978) ("CPLR"), which together provide for a summary-type special proceeding to enforce a judgment by directing a third party garnishee to turn over to the judgment creditor property or debts belonging to the judgment debtor.

The first proceeding, in aid of enforcement of petitioners' judgment against Martino, is brought against RHM Industries, Ltd. ("RHM"), a New York corporation, as garnishee. In that proceeding, petitioners seek an order requiring RHM to turn over to them monies RHM assertedly owes to Martino on a note executed in connection with the redemption of Martino's RHM stock.

In the second proceeding, in aid of enforcement of their judgment against Ramart, petitioners name as garnishees three former shareholders, officers and directors of Ramart, the now dissolved debtor corporation—namely, Frank Martino, Jr. ("Martino, Jr.," Martino's son), Gerard V. Hughes and Miquel A. Rosa. Petitioners seek to recover from these garnishees funds they received upon Ramart's dissolution constituting the proceeds of the sale of Ramart's assets to RHM.

By order of the Hon. Raymond J. Dearie, the two proceedings were referred to me for report and recommendation. While a report on both proceedings has been prepared, counsel recently advised that a settlement has been reached in the second proceeding, to be consummated in early March, 1988. Accordingly, those portions of the legal discussion of the report pertaining solely to the second proceeding have been deleted. With respect to the first proceeding, based on the undisputed facts detailed below and for the noted reasons, I recommend that petitioners be granted the relief they seek.

## THE FACTS

### The Copyright Proceeding and Judgment

In April of 1979, petitioners brought suit in this district for infringement of their copyrights in various sound recordings and record album graphics, naming as defendants Martino, Ramart and others.[1] Following a trial before the Hon. Thomas C. Platt, the Court, on July 11, 1986, entered a final judgment against Martino and Ramart, awarding petitioners both injunctive relief and damages in the amount of $1,346,726.20, plus interest, from July 11, 1986. To date, no portion of that judgment has been satisfied.

### Ramart's Dissolution and The Distribution of Its Assets

While that action was pending, on July 9, 1982, the officers, directors and shareholders of Ramart—Martino, Martino, Jr., Hughes and Rosa—dissolved the corporation, then a defendant in the suit. At that time, Ramart executed an agreement transferring all of its assets to RHM, a corporation having the same directors and shareholders as Ramart, in exchange for a promissory note in the amount of $125,000. Ramart then assigned the note to its four shareholders in proportion to their ownership interest in the corporation, distributing

---

1. When the Court entered judgment against defendants George Tucker and Super-Dupers, Inc. on June 30, 1983, the action against Martino and Ramart was severed and proceeded separately.

$63,750 to Martino, Sr., $25,000 to Martino, Jr. and $18,125 each to Hughes and Rosa.

*The RHM Note and Martino Assignment*

One week later, by agreement executed July 16, 1982, Frank Martino, Sr., then a 40% shareholder of RHM, sold all of his RHM stock back to that corporation. The stock was redeemed for a total purchase price of $250,000, payable $55,000 in cash and $195,000 by an eight year installment note. Thereafter, Martino and his wife, Hannelore, moved to Florida where they purchased a home and have since resided.

On May 13, 1983, Martino executed a document purporting to assign to his wife the debt owed to him by RHM. The assignment was drawn up by a Florida attorney, and was presumably executed in Florida. While the assignment recites that it is "[f]or value received," Martino has conceded that no legally cognizable consideration passed.[2] Rather, as Martino explained at his deposition, the assignment was made solely to ensure his wife's financial security in the event that he became disabled.[3] Following the assignment, at least some payments on the note were made to Hannelore Martino.

In December of 1986, petitioners served a restraining notice on RHM, subsequently extended by notice served in December of 1987. Pursuant to that notice under CPLR 5222, prohibiting the transfer of any property in which Frank Martino has an interest, RHM is currently holding a total of $102,900 in payments due on the Martino note.

*The First Turnover Proceeding*

Thereafter, petitioners commenced the two instant turnover proceedings. As noted above, the first was brought against RHM as garnishee to secure the $102,900 in payments owed on the Martino note, in partial satisfaction of their judgment against Frank Martino.

In opposition, RHM and Martino have raised two objections seeking dismissal of the proceeding. First, Martino protests that petitioners failed to acquire personal jurisdiction over him. Further, both RHM and Martino initially urged dismissal for failure to join an indispensible party—Martino's wife, Hannelore. As detailed below, however, the latter objection has since been resolved by RHM's impleading of Hannelore Martino, who has appeared in the proceeding and answered on the merits.

As to the substance of the claim, it is petitioners' view that, applying New York law to the undisputed facts, the assignment of the RHM note to Hannelore Martino is a fraudulent conveyance. Hence, they urge, as a matter of law they are entitled to the proceeds of the note as an asset of judgment debtor Martino. The Martinos argue, in response, that the legal viability of the assignment is governed by Florida law. According to respondents, that law, when applied to the facts of this case, warrants, at a minimum, an evidentiary hearing regarding the validity of the assignment.

## DISCUSSION

### A. *Respondents' Arguments for Dismissal*

At the outset, an examination of respondents' preliminary objections regarding lack of personal jurisdiction and failure to join an indispensable party requires an understanding of the rule and statutes governing the proceeding. Those provisions are as follows:

#### 1. The Nature of the Proceeding

Under Rule 69(a), Fed.R.Civ.P., a judgment creditor seeking to enforce a federal judgment is directed to employ, in federal court, the practice and procedure governing execution of judgments of the state in which the federal court sits. The rule provides, in pertinent part:

The procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in

---

**2.** This concession was made by Martino's counsel at oral argument held November 19, 1987.

**3.** *See* Deposition of Frank Martino, Sr., of April 6, 1987, pp. 61–64.

which the district court is held, existing at the time the remedy is sought ...

Among the New York statutory procedures in aid of execution of a judgment are the turnover proceedings provided by CPLR 5225(b) and 5227. CPLR 5225(b) authorizes a "special proceeding" by a judgment creditor to secure an order directing a third party garnishee to turn over to the creditor, in satisfaction of the judgment, "money or other personal property in which a judgment debtor has an interest." CPLR 5227 authorizes an identical proceeding to direct a third party garnishee who "is or will become indebted to the judgment debtor" to pay that debt to the judgment creditor.

The procedural requirements of the two special proceedings are virtually identical. Under CPLR 403(c) and (d), both are commenced by service on the garnishee of a notice of petition and petition or an order to show cause. Further, although the judgment debtor must be notified of the proceeding, he need not be formally designated as a respondent; and notice to him is sufficient if given by registered or certified mail with return receipt requested. CPLR 5225(b) and 5227. The judgment debtor may then seek to intervene in the proceeding if he wishes, as may any "adverse claimant" to the debt or property. Upon such intervention, the proceeding is converted into a plenary test of who is entitled to the disputed debt or property. *See* CPLR 5239. The Practice Commentary to CPLR 5227 advises that "[if] there is any possibility that the debt is owed to someone other than the judgment debtor, the garnishee must assure that ... any third person claimant is made a party, seeking court leave to interplead them if need be," Siegel, Practice Commentaries on CPLR 5227, C5227:1 at 283 (McKinney 1978), *citing* CPLR 1006(b), 401. Otherwise, the commentator cautions, the judgment will not be binding on the omitted claimant, "thus subjecting the garnishee to double liability in a future lawsuit by the claimant." *Id.* at 283–84.

■ Finally, as to subject matter jurisdiction, the authorities are unanimous that a federal court maintains ancillary jurisdiction to enforce its own judgments, and that, under Rule 69, Fed.R.Civ.P., no independent jurisdictional basis is necessary to commence an enforcement proceeding against a garnishee not a party to the original suit. *See, e.g., Skevofilax v. Quigley,* 810 F.2d 378, 384 (3d Cir.) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987) (rejecting argument that federal court must possess an independent basis of subject matter jurisdiction over a garnishee; the Court wrote: "Rule 69 does not contemplate that the holders of federal judgments must resort to state tribunals for their enforcement."); *Blackburn Truck Lines, Inc. v. Francis,* 723 F.2d 730, 732 (9th Cir.1984) (" '[T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment is satisfied.... Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the constitution' ", *quoting Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867)); *Chambers v. Blickle Ford Sales, Inc.,* 313 F.2d 252, 256 (2d Cir.1963); *American Safety Table Co. v. Schreiber & Goldberg, Inc.,* 320 F.Supp. 603, 604 (S.D. N.Y.1970) (observing that federal courts are vested with ancillary jurisdiction over proceedings to enforce their judgments because "a federal court [has] a vital interest in seeing that [its] judgments are not rendered ineffective by ... misconduct.").

### 2. Martino's Jurisdictional Objection

■ The sole jurisdictional complaint advanced in the first proceeding is Frank Martino's claim that, since he is concededly a Florida resident, personal jurisdiction could not be acquired over him by mail service in Florida or service upon his attorney. The short answer to Martino's complaint is that, as the judgment debtor, he is not a necessary party to the proceeding. As indicated above, under both CPLR 5225(b) and 5227, the judgment debtor need not be made a respondent. He must be afforded appropriate notice, but the statute

is satisfied if notice is served by registered or certified mail, with return receipt requested. *Matter of Ruvolo v. Long Island Railroad Co.*, 45 Misc.2d 136, 145, 256 N.Y.S.2d 279 (Sup.Ct.Queens Co.1965). Since that requirement was met here, Martino received all the notice he was due. He was thereafter free to intervene to contest the merits of petitioners' claim. While Martino's counsel formally took the position that his appearance was solely for the purpose of contesting jurisdiction, he fully availed himself of the opportunity to address the merits of the case at oral arguments before the Court.

### 3. The Non–Joinder of Hannelore Martino

Both RHM and Martino initially urged the dismissal of the proceeding for failure to join an indispensible party, Hannelore Martino. Based on the assignment of the note from Martino to his wife, they argued that unless Hannelore Martino was made a party to the proceeding, she would not be bound by the Court's decision, thus subjecting RHM to potential double liability on the note. In advancing the argument they relied, primarily, on *Bergdorf Goodman, Inc. v. Marine Midland Bank*, 97 Misc.2d 311, 411 N.Y.S.2d 490 (N.Y.Civ.Ct.1978), holding, apparently in the alternative, that a joint tenant in a bank account which is the subject matter of a turnover proceeding is an indispensible party whose non-joinder requires dismissal of the petition.

At the outset, as set forth above, CPLR 5225 and 5227 by their terms do not require a turnover petitioner to join adverse claimants as respondents in the proceeding, but rather expressly contemplate that such adverse claimants may intervene. Hence, the language of the statutes itself casts considerable doubt on the correctness of the Court's reasoning in *Bergdorf Goodman*. *See Matter of Ruvolo v. Long Island Rail-*

*road Co.*, 45 Misc.2d at 146–47, 256 N.Y.S.2d 279 (adverse claimants are not necessary parties in proceedings under CPLR 5225(b) and 5227; rather, the statutes provide that interested third parties may intervene to assert their claims).

Nonetheless, in light of the Practice Commentary's admonishment that it is the garnishee's responsibility to ensure against potential double liability by joining in the proceeding any adverse claimants to the fund, RHM was directed, at oral argument held November 19, 1987, to implead Hannelore Martino by serving her in Florida, her state of residence, in the same manner as service of a summons in New York, under CPLR 403 and 308.[4] This service was accomplished as directed and Hannelore Martino has since appeared in the proceeding and presented her opposition on the merits. Accordingly, respondents' claim that the proceeding must be dismissed for failure to join an indispensible party is now moot.

### B. The Merits of the Proceeding

As noted above, petitioners seek by this proceeding to secure the $102,500 still owed by RHM on the Martino note, in partial satisfaction of their judgment against Martino. The thrust of respondents' opposition is that because Frank Martino assigned the note to his wife, Hannelore, it is no longer a debt belonging to the judgment debtor. Hence, respondents conclude, it cannot be reached by petitioners. Because, as indicated below, the parties are in agreement that, if New York substantive law governs the dispute, petitioners are entitled to relief as a matter of law, the outcome of the proceeding turns on the choice of substantive law to be applied.

### 1. The Substantive Law

It is uncontroverted that, under New York law, the assignment of the note

---

4. Such out-of-state service sufficed to join Hannelore Martino as a third party respondent because turnover proceedings under CPLR 5225(b) and 5227 are in fact actions *in rem. See* CPLR 314(2), providing for "[s]ervice ... without the state ... in the same manner as service is made within the state ... where a judgment is

demanded that the person to be served be excluded from a vested or contingent interest in ... specific ... personal property within the state ..." *See also Staklinski v. General Electric Co.*, 27 Misc.2d 1084, 210 N.Y.S.2d 573 (Sup.Ct. N.Y.Co.1960).

by Martino to his wife is a fraudulent conveyance that must be treated as a nullity for purposes of this proceeding. Section 273–a of the New York Debtor and Creditor Law ("D.C.L.") provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages ... is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

Here, of course, Martino was a defendant in the instant suit when he assigned the RHM note to his wife, and it is undisputed that, in return for the assignment, he received no legally cognizable consideration.[5] It is therefore not surprising that Martino has conceded that the assignment was fraudulent under New York law and that, if New York law applies, petitioners are entitled to the relief they seek as a matter of law.[6]

Instead, respondents take the position that the validity of the assignment is governed not by New York law but by Florida law. Under Florida law, unlike New York's D.C.L. § 273–a, a judgment creditor seeking to set aside a conveyance as fraudulent must generally prove fraudulent intent—that is, that the judgment debtor made the conveyance with the intent to "delay, hinder or defraud creditors." FLA. STAT. § 56.29(6)(b) (1973). This is so even if, as here, the conveyance is made without consideration during the pendency of the lawsuit.

The Florida statute does provide an exception to the general requirement of proof of fraudulent intent if the judgment debtor conveys property to a relative or another in a confidential relationship within one year prior to the commencement of the judgment execution proceeding. Under such circumstances, the burden shifts to the debtor to establish an absence of intent to "delay, hinder or defraud creditors" by the conveyance. FLA.STAT. § 56.29(6)(a). Here, however, Martino executed the assignment in 1983, nearly four years before this turnover proceeding was commenced. Hence, if Florida law governs the validity of the assignment, petitioners would bear the burden of establishing that Martino made the assignment to his wife with the intent to defraud his creditors.

This burden is not easily met short of an evidentiary hearing. There is substantial authority that issues of intent or state of mind cannot be appropriately decided on a motion for summary judgment. *See, e.g., Wakefield v. Northern Telecom, Inc.*, 813 F.2d 535, 540 (2d Cir.1987) ("Summary judgment is usually inappropriate when ... state of mind is an issue."); *United States v. Paladin*, 539 F.Supp. 100, 104 (W.D.N.Y. 1982) ("Because actual intent to defraud is a necessary element of a cause of action under ... [particular New York fraudulent conveyance statute], summary judgment is inappropriate with respect thereto."). Here, while much evidence in the record indicates that the assignment was made with actual fraudulent intent, the deposition testimony of Frank Martino proffering an alternative explanation suffices to raise a genuine issue of fact. Hence, unless New York law applies, the merits of the

---

**5.** Martino acknowledged in his deposition that no money or property changed hands, nor was the assignment in satisfaction of any antecedent debt. His proffered reason for the assignment —that he wished to provide for his wife who had cared for him during his illness—fails to establish fair consideration as a matter of law. *See, e.g., Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 125, 508 N.Y.S.2d 17 (2d Dept.1986) (affirming summary judgment under § 273 where husband conveyed property because of his "ill health and his long-standing promise to his wife's father to convey his interest [in their home] to her once the mortgage had been satisfied"); *Duckstein v. Rosa*, 118 A.D.2d 951, 499 N.Y.S.2d 515 (3d Dept.1986) (husband's promise

to give home to wife when mortgage was paid did not constitute fair consideration); *Rush v. Rush*, 19 A.D.2d 846, 244 N.Y.S.2d 673 (2d Dept. 1963) ("love and affection" and wife's promise to provide for husband's young daughter by a previous marriage not fair consideration); *Corbin v. Litke*, 105 Misc.2d 94, 96–97, 431 N.Y.S.2d 800 (Sup.Ct. Suffolk Co.1980) (wife's attempt to resolve marital dispute and agreement to continue living with husband not fair consideration).

**6.** This concession was made during oral argument held November 19, 1987.

first proceeding cannot be decided summarily and the Martinos are entitled to an evidentiary hearing.

### 2. Applicable Conflict of Law Principles

■ On the question of what law applies in testing the validity of the assignment, the initial task is one of characterization. In other words, to select the appropriate principles governing the choice of law, one must first identify the nature of the issue to be determined.

It is the Martinos' perspective that the matter before the Court should be viewed, simply, as a transfer of title to intangible property. Such an issue, they urge, is governed by New York conflict of laws principles for property questions, which direct the application of the law of Florida, the place where the assignment was executed. According to petitioners, however, the issue to be determined is in fact one of fraud or tort. Hence, invoking New York conflict of laws rules applicable to torts, they conclude that the issue is governed by New York law.

A recognition that the issue posed here involves the validity of an assignment of intangible property does not, however, itself resolve the problem. One must also consider the context in which the validity of that assignment is being assessed. Were the controversy here between the parties to the assignment—Mr. and Mrs. Martino— and if their dispute involved the validity or interpretation of the assignment instrument as it affects their respective property interests in the note, then the issue could reasonably be described as one of intangible property law. In such a case, as urged by the Martinos, the issue would be determined by the conflict of laws rules governing the transfer of intangible property interests. These include, as the Martinos note, a rule that the assignment of intangi-

ble property is governed by the law of the place of the assignment. *See, e.g., Callwood v. Virgin Islands National Bank,* 221 F.2d 770, 774 (3d Cir.1955).[7]

■ But the dispute here cannot be meaningfully described as one involving title to or property rights in the note as between the parties to the assignment. Rather, the issue is whether that assignment, regardless of its validity in passing property interests to Mrs. Martino, was nonetheless fraudulent as to a third party judgment creditor of Mr. Martino, the assignor. If so, such a defrauded creditor may be entitled to avoid the assignment and secure the asset, whether or not the assignment was otherwise valid as between the immediate parties. In short, because the instant controversy actually concerns not the validity of the assignment in a vacuum but whether that assignment was wrong or fraudulent vis a vis petitioners, it is one of tort law, not property law. Accordingly, it should be determined by conflict of laws principles governing the selection of law in tort cases.

This choice of applicable principles is well-supported by the authorities. In *Dearing v. McKinnon Dash & Hardware Co.,* 165 N.Y. 78, 58 N.E. 773 (1900), the judgment debtor, a Michigan corporation, had executed a trust indenture agreement, valid under Michigan law, transferring to a Michigan trustee certain interests in all of its property, including a number of buggies located in New York. Thereafter, a New York judgment creditor attached those buggies to satisfy its New York judgment. The New York Court of Appeals squarely rejected the argument that the validity of the trust instrument under Michigan law defeated the New York judgment creditor's rights to reach the goods, writing:

> Judicial comity does not require us to enforce any clause of the [trust] instru-

---

**7.** A second rule the Martinos invoke—that the assignment is governed by the law of the situs of the debt—is simply misapplied by them. Contrary to their contention, the situs of a debt does not follow the creditor but remains with the debtor. *See, e.g., Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017 (2d Cir.1978); *Beck v. Manufacturers Hanover Trust Co.,* 125

Misc.2d 771, 481 N.Y.S.2d 211 (Sup.Ct.N.Y.Co. 1984). Since RHM, the debtor on the Martino note, is a New York corporation with its offices in New York, the situs of the debt is here in New York. Hence, were this rule applicable to the instant dispute, New York law would govern.

ment, which, even if valid under the *lex domcilii* [Michigan, where the instrument was executed], conflicts with the policy of our state relating to property within its boarders, or impairs the rights or remedies of domestic creditors.... A transfer in another state, although valid there, which would be void as to creditors if made here, does not confer title to personal property situated here that is good as against a resident of this state armed with legal process to collect a debt....

*Id.* at 87, 58 N.E. 773 (citations omitted).

In *Irving Trust Co. v. Maryland Casualty Co.*, 83 F.2d 168 (2d Cir.), *cert. denied*, 299 U.S. 571, 57 S.Ct. 34, 81 L.Ed. 421 (1936), Judge Learned Hand, writing for the Second Circuit, reached an analogous result in a case involving a conveyance of real property located in another state. There, a foreign corporation doing business in New York made a preferential transfer of real property located in Missouri; the deed was delivered to the transferee in New York. The transfer was fraudulent under New York law but was valid under the law of Missouri. Judge Hand held that although the transfer was valid under the law of the situs and would therefore be regarded as passing title even in New York, the transaction should be characterized as one in tort. Hence, applying the law of the place of the wrong—New York —the grantee was "liable to the grantor's [New York] creditors" despite his "unimpeachable" title. *Id.* at 171.

More recently, in *In Re Lea Fabrics, Inc.*, 226 F.Supp. 232 (D.N.J.1964), the Court directly addressed the issue of "what law governs the validity *as to third parties* of assignments and transfers of intangibles." *Id.* at 236 (emphasis in original). The Court reasoned:

Although the validity of an assignment of intangibles between the assignor and assignee would be governed by the law of the place of the assignment, *Callwood v. Virgin Islands National Bank*, 3 Cir. 1955, 221 F.2d 770, such a choice of law rule is inappropriate to the determination of the validity of the assignment as to

creditors of the assignor or assignee, and the choice of law in such a case depends upon an analysis of each particular situation, Ehrenzweig on Conflict of Laws, 1962, § 242 pp. 636–637.

*Id.* See also *In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380, 391–95 (Bankr.S.D.N.Y.), *aff'd on other grounds*, 44 B.R. 1023 (S.D.N.Y.1984) (deeming a fraudulent conveyance a tort in selecting applicable conflict of law principles); Leflar, *American Conflicts Law* § 185 at 380 n. 6 (3d ed. 1977) (approving "tort characterization" in determining "law governing validity of allegedly fraudulent or preferential transfers and assignments"); Ehrenzweig and Westen, *Fraudulent Conveyances in the Conflict of Laws: Easy Cases May Make Bad Law*, 66 Mich.L.Rev. 1679, 1689 (1968) ("the conflicts law of torts ... controls ... fraudulent conveyances"); Comment, *Choice of Law In Fraudulent Conveyance*, 67 Colum.L.Rev. 1313 (1967) (advocating view that "when a conveyance of land is claimed to be a fraud on a judgment creditor," *id.* at 1313, "the central issue [in determining choice of law] can be most meaningfully described not as one of property law, but as one of tort law." *Id.* at 1314).

In sum, both logic and authority dictate that the issue presented in this case— whether the assignment of the RHM note may be avoided as a fraud on New York creditors—should be characterized as a tort for purposes of selecting the appropriate New York conflict of laws principles.

### 3. Application of New York Conflicts Rules Governing Torts

■ Turning to New York's choice of law rules in tort cases, the New York Court of Appeals, in *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.E.2d 743, 191 N.E.2d 279 (1963), announced that it would henceforth abandon the traditional choice of law rule of *lex loci delicti*—that is, the law of the place of the tort, and instead adopt the "center of gravity" or "grouping of contacts theory" that it had previously applied in contract cases. That theory, as formulated in the contract context in *Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99

(1954), no longer "regard[s] as conclusive the parties' intention or the place of making or performance, [but] ... emphasi[zes] rather ... the law of the place which has the most significant contacts with the matter in dispute" (citations omitted). *Id.* at 161, 124 N.E.2d 99. In *Babcock*, the Court deemed this "center of gravity" or "grouping of contacts" doctrine "as likewise affording the appropriate approach for accomodating the competing interests in tort cases with multi-state contacts," observing:

> Justice, fairness and 'the best practical result' may best be achieved by giving controlling effect to the law of the jurisdiction which because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.

12 N.Y.2d at 481, 240 N.Y.S.2d 743, 191 N.E.2d 279. *But see Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 699, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978) (*lex loci delicti* remains the general rule in tort cases to be displaced only in extraordinary circumstances).

The same approach has been adopted in the *Restatement (Second) of Conflict of Laws* (1969) (hereafter *"Restatement"*). Section 145 provides that an issue in tort is to be determined by the law of the state having "the most significant relationship to the occurrence and the parties." In reaching this assessment, a court is instructed to look to enumerated contacts, "according to their relative importance with respect to the particular issue," including:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, ... place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Restatement*, § 145(2). Further, a court is advised to evaluate these contacts in light of stated principles, including the "relevant policies" and "interests" of the forum and other interested states, "the protection of justified expectations," the "policies underlying the particular field of law," and "cer-tainty, predictability and uniformity of result." *Restatement*, § 6.

Here, as in *Babcock*, 12 N.Y.2d at 482, 240 N.Y.S.2d 743, 191 N.E.2d 279, "[c]omparison of the relative 'contacts' and 'interests' of New York and [Florida] in this litigation, vis-a-vis the issue here presented, makes it clear that the concern of New York is unquestionably the greater and more direct and that the interest of [Florida] is at best minimal." The instant action involves the question of whether petitioners, who have secured a New York judgment against a debtor who was previously a New York domiciliary, may set aside the debtor's conveyance to his wife of an asset located in New York which is fraudulent as against petitioners under New York law. As to relevant "contacts" with the forum, New York has been the domicile of the judgment creditors throughout the pertinent time period and, until five years ago, was the domicile of the debtor and his wife, too. New York is also the situs of the disputed asset, RHM's remaining debt under the note, and that asset is now frozen under a New York restraining order. Further, New York is the place where petitioners sustained their injury; it is here that they have been thwarted in their ability to collect their New York judgment.

Beyond this, New York is the state where most of the relevant relationships between the parties are centered. It is the location of the debtor's infringement of petitioners' copyrights, giving rise to their injuries in the first instance. It is also the forum of the lawsuit in which a judgment has been entered against the debtor awarding $1.3 million in damages to petitioners. Finally, New York is the site of the debtor's relationship with RHM, which gave rise, under an agreement executed in New York, to the debt which is the subject of the dispute. In sharp contrast, Florida's sole contacts with the issue presented here are that the judgment debtor and his wife, previously New York residents and domiciliaries, moved there some four years after the commencement of this lawsuit; and the debtor's assignment of the note to his wife was presumably executed in Florida.

Even more importantly, however, New York has an especially strong interest in applying its law when one of its domiciliaries alleges that it has been defrauded, *see, e.g., O'Connor v. Lee–Hy Paving Corp.,* 579 F.2d 194, 205 (2d Cir.), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978); *Accusystems, Inc. v. Honeywell Information Systems, Inc.,* 580 F.Supp. 474, 480 (S.D.N.Y.1984), and in ensuring that its judgments are not frustrated by wrongful acts of judgment debtors, regardless of where those acts might occur, *see, e.g., Irving Trust Co. v. Maryland Casualty Co.,* 83 F.2d at 171; *Dearing v. McKinnon Dash & Hardware Co.,* 165 N.Y. at 87, 58 N.E.2d 773. Indeed, the New York legislature's recent enactment of D.C.L. § 273–a attests to an explicit state policy to facilitate the collection of New York judgments against defendants who, during a New York lawsuit, make transfers of their assets that are presumptively fraudulent because made without fair consideration.

By contrast, the Florida statutory scheme does not even address the situation presented here—that is, a debtor's transfer of assets that is *concededly* made without fair consideration. Rather, the Florida statute places a one year time limit on the presumption of fraudulent intent it accords *all* conveyances, regardless of consideration, to transferees in a confidential relationship with the judgment debtor. Even assuming that this time limitation suggests some interest on Florida's part in according an added measure of protection to such transferees (by requiring that the judgment creditor prove fraudulent intent), there is no reason to believe that Florida has a legitimate interest in extending this protection to shelter a New York judgment debtor who effects a conveyance within its borders that is fraudulent as to New York

creditors because concededly made without consideration. At a minimum, New York's strong interest in preventing such a result overcomes Florida's narrow interest as evidenced by the time limitation on its statutory presumption.

Finally, of course, application of Florida law here would sorely undermine any "certainty and predictability ... of result" in enforcing New York judgments. If the outcome of a New York judgment enforcement proceeding can be dictated by the fortuity that the judgment debtor, by design or coincidence, happens to move to a state less protective of its own judgment creditors than is New York, there can be no certainty or predictability in the enforcement of New York judgments. Thus, an examination of the relevant contacts and policies under a "center of gravity" analysis overwhelmingly favors the law of New York as governing the issue here.

Applying the traditional tort principles of *lex loci delicti* leads to the identical result. The authorities are unanimous that in fraud cases where the wrongful acts occur in a state other than that in which the injury is suffered, the case is governed by the law of the state where the injury or economic loss is felt. *See, e.g., Industrial Consultants, Inc. v. H.S. Equities, Inc.,* 646 F.2d 746 (2d Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Sack v. Low,* 478 F.2d 360 (2d Cir. 1973); *Maiden v. Biehl,* 582 F.Supp. 1209 (S.D.N.Y.1984); *Posner v. Merrill Lynch, Pierce, Fenner & Smith,* 469 F.Supp. 972, 979–80 (S.D.N.Y.1979). Here, of course, petitioners' injury—their inability to collect their New York judgment—is felt in New York. Hence, under this theory too, New York law applies.[8]

---

**8.** Even analyzing the issue by reference to the principles invoked by the Martinos, New York law would govern. As noted above (at n. 7), under the rule that the validity of a conveyance of intangible property, including a debt, is governed by the law of the state where the property is situated, New York law applies. The Martinos have also cited the rule that the validity of the assignment of an intangible is governed by the place of the assignment—here, presumably in Florida. *See, e.g., Callwood v. Virgin Islands*

*National Bank,* 221 F.2d at 774. It is recognized, however, that if the situs of the property —here, New York, where RHM holds the asset —has a greater interest, its law may control. *In Re Liebl's Estate,* 201 Misc. 1102, 1106, 106 N.Y. S.2d 715 (Sur.Ct. Kings Co.1951) ("The general rule that the transfer of a chose in action is governed by the law where the transfer is made is not without exceptions ..., and where the property is located in another state, such transfer is not valid in that other state if the transfer

#### 4. Petitioners' Entitlement to Summary Judgment

 Finally, as noted, once New York law is applied to Martino's assignment to his wife of the RHM note, it is undisputed that the assignment was fraudulent as to petitioners under D.C.L. § 273–a. Accordingly, as a matter of law they are entitled to avoid the assignment and collect the proceeds of the note to satisfy, in part, their judgment against Martino.[9]

### CONCLUSION

For the foregoing reasons, I recommend that judgment be entered directing RHM to turn over to petitioners money presently owed and to become owed by RHM to judgment debtor Frank Martino under the July 16, 1982 note.[10]

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.

Dated: Brooklyn, New York
February 5, 1988

---

conflicts with the interest of that state and its citizens." (citations omitted)).

**9.** A final issue, apparently raised at oral argument before Judge Dearie, concerns the choice of statute of limitations governing this proceeding. The law is clear that New York uniformly applies its own limitations period unless the cause of action accrued outside of the state in favor of a non-resident. *Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977); *Gross v. Diversified Mortgage Investors,* 438 F.Supp. 190, 197 (S.D.N. Y.1977); 1 Weinstein–Korn–Miller, *New York Civil Practice* ¶ 202.01 (1986); CPLR 202. Here, since the cause of action accrued in New York, *see Industrial Consultants, Inc. v. H.S. Equities, Inc.,* 646 F.2d at 747, in favor of a New York

resident, New York's six year limitations period controls. Petitioners are well within it. *See Federal Deposit Insurance Corp. v. Pappadio,* 606 F.Supp. 631, 632 (E.D.N.Y.1985); *Buttles v. Smith,* 281 N.Y. 226, 236–37, 22 N.E.2d 350 (1939); CPLR 213(1).

**10.** Respondents have sought sanctions against petitioners' counsel for failure to disclose the assignment of funds in his moving papers. Given petitioners' good-faith, and correct, position that the assignment was fraudulent and a nullity, and in the absence of any indication of willfulness or bad faith on counsel's part, I recommend that the request be denied. *See Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985).